# C. FAULKNER HICKERSON et al., Appellants, v. C. C. FLANNERY, et al., Appellees.—302 S. W. (2d) 508.

Middle Section.   December 21, 1956.

Petition for Certiorari denied by Supreme Court March 8, 1957.

330

Maclin P. Davis, Jr., S. T. Snodgrass, Nashville, for Marion S. Webb and R. S. Alvarez, appellants.

Elmer D. Davies, Jr., Nashville, for members of Davidson County Bd. of Zoning Appeals, appellants.

Bailey, Ewing & Powell, Nashville, for appellees.

HICKERSON, J. Amelia S. Webb and Marion S. Webb, as owners, and Sequoia Club, as optionee to purchase, made application to the Board of Zoning Appeals of Davidson County, Tennessee, in regular manner for a permit to build a private club in an Estates "B" area of Davidson County, Tennessee.

Many persons, called proponents, supported the application. To the contrary, many persons, called opponents, opposed the application. After a full hearing before the Zoning Board, the Board made and entered on its minutes the following resolution which contains its findings of fact and final decision or judgment:

"Be It Resolved by the Davidson County Board of Zoning Appeals in special meeting this 10th day of June, 1955, and having fully considered in public hearing on June 9, 1955, and having further considered on this date Appeal Case No. 55-50 Amelia S. and Marion S. Webb, appellants and owners, represented by Frank Fitzpatrick, Real Estate Agent, Sequoia Club, optionee, said club being represented before the Board by Maclin P. Davis, Jr., Attorney and S. T. Snodgrass, Attorney. Located on the westerly side of Hillsboro Pike, approximately 3650' south of Otter Creek Road, 7th Civil District, wherein is requested exceptions in the land use requirements of the Estates A and Estates B Districts so as to permit the establishing and construction of a private club to be known as the Sequoia Club, including such facilities as a club house, swimming pool, tennis court, parking and picnic areas; and it appearing among other things from the information and evidence before the Board that the optionees had contracted with the owners to acquire 9.74 acres of land lying in the rear of their property, also in the rear of the Grissim and Witherspoon properties, including a 30' access road along the southerly margin of the owners' property extending from Hillsboro Pike westwardly to the property in question; that it was proposed to have the following facilities located on

the property instead of those facilities that were indicated in the original application:

"1. Swimming pool

"2. Open-air dancing pavilion

"3. A one-story bathhouse, storage room and snack bar

"4. Softball court

"5. Tennis courts

"6. An all-purpose court

"7. Picnic area

"8. Prepared parking area to accommodate approximately 100 cars

and it further appearing to the Board that the Sequoia Club was organized for the purpose of providing recreational facilities for family groups where all members of the family would be members of the club; that said club had tentatively adopted a constitution setting out the objective, government, election of directors, election of officers and their duties, membership meetings, election of members, admission fees, dues, resignation and transfer membership, certificates of membership, penalties, assessments, indebtedness to the club, and amendments; that said club had adopted bylaws governing the meetings of the Board of Directors, functions of the Committees, house rules, rules governing the swimming pool and a financial statement; that a charter of incorporation was filed with the Board dated June 9, 1955, and signed by Robert S. Alvarez, Paul A. Christensen, Holmes Johnston, Mrs. Robert Terry, Mrs.

Lewis S. Graham, Mrs. Roy Kennedy, and Frank R. Fitzpatrick, before a notary public; that the maximum membership of the club would be 300 families; that the site and architectural plans were approved by the Davidson County Planning Commission at its meeting June 7, 1955; and the Board being of the opinion that the Sequoia Club, a non-profit organization, had been properly organized and had adopted a constitution, rules and regulations in keeping with their charter of incorporation and in keeping with the purpose and intent with sec. 18, sub-sec. 12, Item C, as set out under the Zoning Regulations; and the Board being further of the opinion that the granting of this request would not impair an adequate supply of light and air to adjoining property, or materially increase the congestion in public streets, or increase the public danger of fire and safety, or materially diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, comfort, morals and welfare of the community; and the Board being further of the opinion that the Quarterly County Court had empowered the Board to grant such a request under certain conditions as would safeguard the character of the community; Now, therefore, it is the decision of this Board that the request of Appeal Case No. 55-50 as set out and described above and further described in the case record be and is hereby granted as follows: that The Sequoia Club be granted the privilege of constructing, maintaining, and using on the property—

"A swimming pool

"An open-air dance pavilion

"Bathhouse for men and women in connection therewith a snack bar and storage room

"Softball diamond

"Two tennis courts

"An all-purpose court

"A picnic area with necessary tables, benches, etc.

"Prepared parking area accommodating at least 100 motor vehicles

"An access road to Hillsboro Pike with the following conditions: that a privet-type hedge be planted around the entire boundary of the property exclusive of the driveway, said hedge or shrubbery to be permanently maintained so long as the premises are occupied by the Sequoia Club and that the entire area be properly landscaped and maintained in an orderly manner; that the driveway leading to Hillsboro Pike be constructed of asphaltic material to such a width so as to allow motor vehicles to pass one another going in opposite directions comfortably; that the parking areas be paved with asphalt or a water-bound material or such material that would not cause dust; that the swimming pool with all its facilities including the disposal of excess water be approved by the State and County Health Departments and permanently maintained in accordance with the rules and regulations of said State and County Health Departments; that all rules of the swimming pool must be carried out as stated on p. 9 of the by-laws of the Sequoia Club; that the Board of Zoning Appeals be furnished with documentary evidence that the Sequoia Club has complied in every respect with

the State Health Department rules and regulations in regard to the serving of food and servicing said swimming pool; that the Sequoia Club be required to obtain and maintain a grade "A" rating as established by the State Health Department for the snack bar, a copy of which shall be filed from time to time with the County Building Commissioner; that no trash or garbage shall be burned or disposed of on the premises, said garbage and trash to be disposed of as required by the Davidson County Health Department regulations; that no alcoholic beverages be allowed on the premises for sale or consumption; that a screen or fence be constructed around all courts and ball diamonds in such a manner that would protect adjoining properties; that any and all flood lights be so focused and directed that the rays therefrom would not penetrate any surrounding or adjoining property; that all vehicles motor or otherwise entering the driveway from Hillsboro Pike must dim the lights and no horns are to be blown after leaving the right-of-way of Hillsboro Pike; that all events and activities shall cease not later than 10:30 P.M., every day in the week, including Saturdays, Sundays and holidays; that the Sequoia Club be operated at all times as a non-profit organization and that the records, particularly financial records, be open for inspection at all times for the Building Commissioner and members of the Board of Zoning Appeals; and that the County Building Commissioner be and is hereby authorized to issue the necessary certificate of compliance and use and occupancy permits accordingly."

Upon a review, the Chancery Court reversed the decision of the Zoning Board and dismissed the application for the permit to erect and operate the club.

The original proponents or applicants have appealed to this Court and have assigned errors attacking the decree of the Chancery Court.

Proponents tested the sufficiency of the petition for certiorari to the Chancery Court by demurrer on the grounds that the petition showed on its face that the Zoning Board had jurisdiction of the cause, it acted within its jurisdiction, it did not act arbitrarily, fraudulently, or illegally; and that the petition for certiorari showed on its face that there was material evidence to support the judgment or decision of the Zoning Board.

The Chancellor overruled the demurrer in part and sustained it in part by decree which provides:

"Upon consideration of which the Court is of the opinion that the demurrer to the whole petition is not well taken and should be overruled, and the Court is further of the opinion that the Court cannot consider additional evidence on the merits of the question or whether or not a variance should be granted but it is the duty of the Court to determine, from the evidence introduced before the Board of Zoning Appeals and such other evidence as may be introduced by the parties, the question whether said Board exceeded its jurisdiction, or has acted illegally or arbitrarily, and, therefore, the demurrer to the parts of the petition as seek to have the Court consider additional proof as to the merits of the question of whether a variance should be granted is good and sufficient.

"It is, therefore, ordered, adjudged and decreed by the Court that said demurrer to the whole petition be, and it hereby is, overruled.

"And it is further ordered, adjudged and decreed by the Court that said demurrer to certain parts of the petition be, and it hereby is, sustained and that so much and such parts of said petition as seek to have the Court consider additional evidence on the merits of the question of whether a variance should be allowed authorizing the use of the property in question as a club are for nothing held, but petitioners will be permitted to file additional proof as to whether the Board of Zoning Appeals acted illegally, improperly or arbitrarily in the hearing of the appeal involved herein."

In Gibson's Suits in Chancery, Fifth Edition, by Mr. Crownover, 369-370, Section 324, it is said:

"The disposition of the Court towards Demurrers.—The Courts do not favor demurrers; and this for several reasons: (1) they are often unecessarily filed; (2) they are frequently hypercritical; (3) they are many times filed for delay; (4) they sometimes evince a disposition to stifle an investigation of the merits of the controversy; and (5) as a result, they very seldom have any merit; and are, consequently, generally overruled.

"The legislation of our State, and that of England, has long been hostile to frivolous demurrers; and the object of our statute, in allowing a defendant to rely on a demurrer in his answer, was to save the delay occasioned by separate demurrers, and in that way

mitigate some of the evils resulting from demurrers without adequate grounds.

"The Courts make every reasonable presumption in favor of the bill when assailed by a demurrer; and if, upon a critical examination of the facts stated in the bill, there is a possibility that the suit may be sustained, though upon a different ground from that assumed, a demurrer to the whole bill will be overruled, the policy of the Courts being, to give every complainant an opportunity to be heard on the merits of his case, when any Equity whatever appears in his bill, although defectively stated. For this reason, demurrers are now less frequently filed than formerly."

■ The Chancellor correctly disposed of the demurrer. Opponents were entitled to go to proof on their petition for certiorari within the limits decreed by the Chancellor. Our Supreme Court has approved the limitation upon such hearing in the Chancery Court. Hoover Motor Express v. Railroad & Public Utilities Comm., 195 Tenn. 493, 261 S. W. (2d) 233; Brooks v. City of Memphis, 192 Tenn. 371, 241 S. W. (2d) 432.

Assignments one and two which challenge the action of the Chancellor on the demurrer are overruled.

■ Assignment three is:

"The Chancellor erred in finding that the Board of Zoning Appeals acted on the erroneous assumption that the Sequoia Club was in legal existence at the time of the hearing before the Board. This was error because there was no evidence to support this finding and the evidence preponderates against this finding."

When all the proof is considered, it shows that proponents did not represent to the Zoning Board that the corporate organization of the Sequoia Club had been perfected at the time of the hearing before the Zoning Board. The third assignment is sustained.

We quote the fourth assignment:

"The Chancellor erred in holding that it was error for the Board of Zoning Appeals to grant a permit for the use of the property in question as a club since there was no such legal entity as the Sequoia Club. This was error because it is contrary to the law applicable to the case."

The Davidson County Board of Zoning Appeals was created by Chapter 473, of the Private Acts of 1939. Pursuant to this statute, the zoning regulations of Davidson County, Tennessee, were adopted. Section 18(12) (c) of such regulations provides:

"The Board of Zoning Appeals, acting in accordance with the Rules of Procedure prescribed by resolution of the Davidson County Quarterly Court and such supplemental rules of procedure as may be adopted by said Board not inconsistent with the provisions of Chapter 473 of the Private Acts of the General Assembly of Tennessee for 1939, shall have the following jurisdiction and powers:

\* \* \* \* \* \*

"(12) To grant a permit for the erection of buildings and the use of buildings and lands within Agricultural Districts, Estates A Districts, Estates B

Districts, Residential A Districts, Residential B Districts, and Residential C Districts for,

\* \* \* \* \* \*

"(c) Private clubs and golf courses except those a chief activity of which is a service customarily carried on as a business or operated for commercial purposes; provided, it is the finding of the Board that such proposed use and/or buildings will not impair an adequate supply of light and air to adjacent property, or materially increase the congestion in public streets, or increase the public danger of fire and safety, or materially diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, comfort, morals and welfare of the community; and, further provided, the site and architectural plans are approved by the Davidson County Planning Commission, taking into account these considerations."

It is admitted by proponents that the proposed Sequoia Club was not incorporated at the time of the hearing before the Zoning Board. It is established, however, that the Club was incorporated subsequent to that hearing and prior to the trial in the Chancery Court.

Application to build and operate the Club was made by the owners of the land involved and by the Sequoia Club as optionee to buy the land. Obviously, the Sequoia Club did not want to buy the land unless it would be permitted to build and operate the Club thereon. Wherefore, the owners of the land and the Club, as optionee to buy, jointly made application for the permit. This would seem to be the practical way to proceed. If the owners

and the optionee were granted the right to build and operate the Club, the corporate organization of the Club would be completed and the land would be conveyed by the owners to the corporation. If such permit were denied, the owners would not convey the land to the Club.

Why should there be a corporation to build and operate this Club? Why could not an unincorporated association do so? Indeed, why could not an individual do so? We find nothing in the statute nor in the zoning regulations which require a Club to be operated by a corporate entity.

It is our conclusion that the permit could be issued to the owners of the land for the Club to be built and operated by a corporation, an unincorporated association, or an individual. Furthermore, the opponents could not be aggrieved by the ruling of the Zoning Board because the Sequoia Club was actually incorporated before the hearing in the Chancery Court according to the stipulation.

■ The owners had the right to make the application for a permit to use the land for a Club. 58 Am. Jur., Zoning, Section 220; 43 Corpus Juris, Municipal Corporations, Section 374; 62 C. J. S. Municipal Corporations sec. 227; Rathkopf, Zoning and Planning, Vol. I, Chapter 44, Section 2; Annotation, 168 A. L. R. 107.

■ The permission of the Zoning Board to the owners and their optionee to use the land in question for a Club was not personal to the owners or the optionee, but was a condition which ran with the land. Simmons v. Pinsky, 185 Misc. 549, 58 N. Y. S. (2d) 573; Cohn v. County Board, Cal. App. 286 P. (2d) 836; 62 C. J. S.

Municipal Corporations sec. 227, pp. 520, 547; McQuillan, Municipal Corporations, Section 25, 163.

The Fourth assignment is sustained.

■ The Fifth assignment is:

"The Chancellor erred in holding that there was no evidence that the Sequoia Club, which is now in legal existence as a corporation, is the same Sequoia Club to which the Board of Zoning Appeals granted a permit. This was error because there is no evidence to support such a holding and the evidence preponderates against this holding and it is contrary to the law applicable to the case."

Concerning this question, the Chancellor said:

"That the granting of the permit for the erection of the Sequoia Club was material error by the Board in the proceedings before it may be found, and determined from the fact that there is no evidence in the record in this cause, that the Sequoia Club, which is now in legal existence as a corporation, is the same Sequoia Club to which the Board of Zoning Appeals granted the permit. The Club, as it now exists may, or may not, have been granted the Charter of Incorporation which was exhibited to the Board; it may, or may not, have the same list of membership, or the same number of members as was represented to the Board; it may, or may not, have adopted the same constitution and by-laws, as well as club rules, which were exhibited to the Board; and, in so far as this record discloses, it may, or may not, be the same Sequoia Club which was granted the permit."

The proposed charter of incorporation of Sequoia Club, Inc., was filed with the Zoning Board at the hearing before the Board.

The parties stipulated, as follows:

"(c) That the Charter of Incorporation of the Sequoia Club, Inc. was not filed in the Secretary of State's Office and in the Register's Office of Davidson County, Tennessee at the time of the hearing of this matter before the Board of Zoning Appeals, and said charter was not filed with the Secretary of State until the 21st day of February, 1956 and was not registered with the Register's Office of Davidson County, Tennessee until the 23 day of February, 1956."

We think the Chancellor was too strict in his interpretation of the evidence in his foregoing findings. It is apparent to this Court that the parties meant the proposed charter of incorporation of Sequoia Club, already filed in the record at the hearing before the Zoning Board, when they referred to "said charter" in their stipulation. We think that is the reasonable meaning of the stipulation.

The Fifth assignment is sustained.

The Sixth and Seventh assignments of error will be considered together. They raise the question that the Chancellor committed reversible error when he set aside the order of the Zoning Board and dismissed the application of proponents.

■ The Chancellor and this Court are bound by the order of the Zoning Board, if there is material evidence in the record to support the order of that Board. Chapter 473, Private Acts of 1939; Hoover Motor Express v.

Railroad & Public Utilities Comm., 195 Tenn. 593, 261 S. W. (2d) 233.

The purpose of the Club and the proposed method of its operation were explained in great detail. Many persons in the community were in favor of the Club. To the contrary, a large number of persons opposed the Club. Certain witnesses on each side testified before the Zoning Board. After a careful review of the entire record, we have reached the conclusion that the order of the Zoning Board is supported by material evidence. Having that view, the statute and the authorities forbid the substituting of the opinion of this Court for the opinion of the Zoning Board. Under this record, the order of the Zoning Board must be upheld.

■ There is no merit in the contention of opponents that there was so much disorder and confusion in and among the audience at the hearing before the Zoning Board that the opponents were unable to present their case to the Board. There was considerable confusion and some intemperate language and unseemly conduct during the hearing before the Zoning Board. However, the record fails to show that opponents were deprived of any right. Opponents were represented by most able Counsel. The audience was noisy to a regrettable degree. But the Zoning Board gave both sides every opportunity to present any witnesses which they desired. These capable, experienced lawyers representing both sides fully presented the case of the proponents and opponents.

The Chancellor committed reversible error. The decree of the Chancery Court is reversed and the order of the Zoning Board is affirmed and made the judgment of this Court.

Tax all costs in the Chancery Court and in this Court against C. C. Flannery, et al., the opponents and petioners for certiorari, and Bailey, Ewing & Powell, the surety on opponents' bond.

Remand the cause to the Chancery Court for further proceedings consistent with this opinion.

Felts and Shriver, JJ., concur.