H. EVEREST CLEMENTS et al., Appellants, v. FRANK G. STEINHAUER, Respondent.

H. EVEREST CLEMENTS et al., Plaintiffs, v. FRANK G. STEINHAUER, Defendant and Third-Party Plaintiff-Appellant. JOHN F. RANIERI, Third-Party Defendant-Respondent.

Fourth Department, December 7, 1961.

*Van Schaick, Woods, Strathman, Sturman & Costanza (Angelo A. Costanza* and *Howard M. Woods* of counsel), for H. Everest Clements and others, appellants.

*Lacy, Katzen & Greene (Samuel L. Yaroslow* of counsel), for Frank G. Steinhauer.

*Albert E. Goldman* and *Solomon Shinder* for John F. Ranieri, respondent.

HALPERN, J. The plaintiffs lessors appeal from a judgment dismissing the complaint in an action for rent against the defendant lessee. The lessee also appeals from a judgment dismissing his third-party complaint against the third-party defendant, the sublessee. The complaints were dismissed by the court upon the defendants' motions, after the close of the evidence, upon a jury trial.

The lease upon which the action was brought covered premises in downtown Rochester, New York. The lease was executed on November 16, 1955, and ran for a term of two years, com-

mencing January 1, 1956, at a rental of $540 per month. The lease contained, among others, the following provisions: (1) "Said premises are leased for the purpose of operating an automobile parking station and for no other purpose". (2) "Party of the second part [the lessee] agrees to obtain at his own expense all necessary permits for an automobile parking station". (3) "This entire agreement shall be contingent upon appropriate permit for parking being granted to party of the second part, who shall apply for the same on or before December 15, 1955 and his obtaining same on or before December 31, 1955".

By an agreement of the same date, the defendant Steinhauer, the lessee, sublet the premises for the entire term at the same rental to the third-party defendant Ranieri who assumed all the obligations of the lessee under the lease. It may be noted in passing that, although the agreement purported to be a sublease, it was in legal effect an assignment of the lease since the whole term was transferred to the so-called sublessee and no reversionary interest was reserved by the lessee (*Gilbert* v. *Van Kleeck,* 284 App. Div. 611, 647, appeal dismissed 308 N. Y. 882).

The premises had been continuously used as a public parking lot for over 15 years under a permit which had been granted by the Zoning Board of Appeals of the City of Rochester on January 18, 1940, to the Rochester Swiss Laundry Company, the former owner of the premises. The premises were located in an "A Commercial" district and the permit had been granted pursuant to subdivision 9 of section 62 of the Zoning Ordinance of the City of Rochester then in force. This section authorized the Board of Appeals, after notice and hearing, to "determine and vary the application of the regulations herein established in harmony with their general purposes and intent as follows: * * * 9. Permit the establishment and maintenance of a Garage Class A or a gasoline filling station in any commercial district". A garage Class A was defined in subdivision 4 of section 2 of the ordinance as "A structure, or place used for the keeping, housing, storing, servicing, repairing, cleaning or hiring of motor vehicles".

The draftsman of the lease was apparently unaware of the outstanding permit and hence he inserted the provisions quoted above, requiring the lessee to obtain a permit for the use of the premises as a parking lot and making the lease contingent on his obtaining a permit.

After the execution of the lease and the sublease, the sublessee Ranieri applied orally for a parking lot permit to the Zoning Department of the City of Rochester, New York, in December,

1955, and he was told that they would let him know whether a permit was necessary. Without any further word, Ranieri went into possession of the premises on January 1 and operated a public parking business thereon. He paid the rent for the months of January to June, inclusive. On or about July 9, 1956, Ranieri received a notice from the Supervisor of Zoning of the City of Rochester, advising him that, upon investigation, it had been found that he was "conducting a public parking lot without a permit which is a violation of the Building Zone Ordinance" and he was "ordered to discontinue this violation within 5 days". Thereupon, without any further effort to obtain a permit, Ranieri vacated the premises. His attorneys gave notice to the lessee and to the lessors that he elected to "avoid" the lease because a permit had "never been granted" and that the use of the premises for a parking lot "would constitute an illegal use". The attorneys for the lessee also wrote to the lessors advising that since "no permit for parking cars was ever granted", the lease was declared "inoperative and of no effect".

There was evidence that business at the parking lot had been poor; this may have contributed to the precipitate manner in which the lessee and the sublessee acted.

The premises remained vacant after Ranieri moved out. Subsequently on December 14, 1956, the City of Rochester took title through condemnation proceedings. This action was brought to recover rental for the months of July to December, inclusive, but upon the trial, the demand in the complaint was reduced to exclude part of December.

Upon the trial, it appeared that the zoning officer had received a complaint about the operation of the parking lot and had sent the notice to Ranieri in ignorance of the existence of the outstanding permit. Subsequently, the zoning officer consulted the Corporation Counsel and, under date of August 14, 1956, a letter was sent by the Corporation Counsel to Ranieri, with a copy to the lessors' attorneys, advising that further investigation had disclosed "that the use of premises * * * for public automobile parking purposes is a proper one" and further advising that "You are, therefore, entitled to continue your operation of such premises as a parking lot". Ranieri denied receiving this letter, but it was proved that a copy had been received by the lessors' attorneys, and the stenographer who had transcribed the letter testified as to the office practice in mailing letters, indicating that the letter had been duly mailed to Ranieri.

In any event, Ranieri did not resume possession of the premises. He took the position that the lease had become inoperative

and void because of the fact that no permit for use of the premises as a public parking station had been issued. He also claimed in his answer that he had in effect been evicted from the premises by the notice from the City of Rochester and that the plaintiffs had breached their warranty of quiet and peaceful possession.

The trial court indicated in its memorandum that it was satisfied that the permit issued in 1940 was still in force and that therefore the clause in the lease making the lease conditional upon the obtaining of a permit was " an unnecessary provision ". However, the trial court held that, notwithstanding the fact that no permit was necessary, the lease made the issuance of a permit " a condition precedent to the effectiveness of the lease " and, since no new permit had been issued, the lease " never became effective ". The court accordingly dismissed the complaint. This was erroneous. Upon concluding that there was a valid outstanding permit, the court should have directed a verdict in favor of the plaintiffs for the full amount of the rental demanded.

Reasonably construed, the provision of the lease making it contingent upon the obtaining of an appropriate permit for parking was fully satisfied by a demonstration that a valid permit was already outstanding. Certainly, the parties did not mean to make the lease contingent upon the obtaining of a new piece of paper. All that they were concerned with was the right to continue to use the premises as a parking lot and, if the premises could be lawfully so used, that satisfied all the provisions of the lease.

The Supervisor of Zoning expressed some doubt, while on the stand as a witness, as to whether the permit covered public parking, as distinguished from private parking by customers of the property owner. This doubt was adequately answered by a reference to the face of the permit and the terms of the provisions of the zoning ordinance quoted above. The permit was for a Garage Class A which is defined in broad terms, as including the use of the premises for public parking. Furthermore, all buildings on the premises had been torn down before the permit had been applied for, so the permit could not have referred to parking by customers of a business conducted on the premises. The trial court correctly held that the permit authorized public parking. The court also correctly held that the permit inured to the benefit of subsequent owners of the premises and that the permit was still in force (*Matter of Neiburger* v. *Lewis,* 185 Misc. 437; *Matter of Feneck* v. *Murdock,* 16 Misc 2d 789).

In any event, the obligation to obtain a permit was that of the lessee, not that of the lessors, under the terms of the lease. The lessee and the sublessee had no right to abandon efforts to obtain a permit upon receipt of the letter from the Supervisor of Zoning advising that the parking lot was being operated improperly without a permit. Upon receipt of the letter, the lessee and the sublessee should have made an effort to have the situation clarified, and to have the notice withdrawn, as it was in effect withdrawn by the letter of the Corporation Counsel on August 14. If they had failed in that effort, they should have applied formally for a new permit and should have pursued the application with diligence. The lessee and the sublessee having failed to do this, the provision of the lease making the lease contingent upon the obtaining of a permit must be deemed to have been waived. The lessee and the sublessee therefore continued to be liable for rent (*Amies* v. *Wesnofske,* 255 N. Y. 156; *Gardiner Props.* v. *Leider & Son,* 279 App. Div. 470; *Standard Oil Co. of N. Y.* v. *Central Dredging Co.,* 225 App. Div. 407, 410, affd. 252 N. Y. 545; *Friedman Realty Corp.* v. *De Stefan,* 220 App. Div. 661).

The provision in the lease that a permit had to be obtained by December 31, 1955, had, of course, been waived by the lessee's taking possession on January 1 without obtaining a permit (*Campbell* v. *Poland Spring Co.,* 196 App. Div. 331, affd. 233 N. Y. 506).

The erroneous notice from the zoning officer could not be regarded as the equivalent of an eviction by the lessors, entitling the lessee and sublessee to remove from the premises and to terminate their obligation, without regard to any subsequent rectification. The notice was not the act of the lessors nor was it authorized by them. The notice was solely the act of the city authorities and the lessors could not be held responsible for it. (1 New York Law of Landlord and Tenant, § 292; 32 Am. Jur., Landlord and Tenant, § 262, pp. 246–247.)

A procedural point requires a brief comment. The plaintiffs moved at the close of the evidence for a directed verdict and the defendants moved for dismissal of the complaint and of the third-party complaint. The case was thereafter reopened on the application of the plaintiffs and additional rebuttal evidence was received. The record does not show that the motions were formally renewed but it may reasonably be assumed that the parties agreed that the motions should be deemed to have been renewed or that the additional evidence should be regarded as having been introduced prior to the making of the motions. At

the close of the case, after the new evidence had been introduced, the court stated that it had concluded that the case involved only questions of law and it discharged the jury. The court subsequently handed down a memorandum and granted an order reciting that, after the evidence had been taken, each of the parties had made a motion for a directed verdict and that the third-party defendant's motion to dismiss had been made '' at the close of all the evidence.'' The plaintiffs' motion for a directed verdict in their favor must also be deemed to have been made at the close of all the evidence. (See generally *Hopkins* v. *Clark,* 158 N. Y. 299 and other cases cited in 4 Carmody, New York Practice, § 1350, pp. 3122–3123.)

The plaintiffs' motion for a directed verdict should have been granted and the motions by the defendants to dismiss the complaint should have been denied. The judgments appealed from should therefore be reversed and a judgment should be entered in favor of the plaintiffs against the defendant lessee and a judgment should be entered in favor of the lessee against the sublessee on the third-party complaint. (Cf. Civ. Prac. Act, §§ 457-a, 584.)

Present — WILLIAMS, P. J., BASTOW, GOLDMAN, HALPERN and McCLUSKY, JJ.

Judgment, as to the plaintiffs' claim, unanimously reversed on the law, with costs to the appellants against the respondent, Steinhauer, and judgment directed in favor of appellants in the amount of $2,952, with interest and costs.

Judgment, as to the defendant's third-party claim, unanimously reversed on the law, with costs and judgment directed in favor of the appellant against the respondent, Ranieri, in the amount of $2,952, with interest and costs.