[No. A035898. First Dist., Div. One. Oct. 26, 1987.]

ANZA PARKING CORPORATION, Plaintiff and Appellant, v. CITY OF BURLINGAME, et al., Defendants and Respondents; METROPOLITAN PARKING CORPORATION et al., Real Parties in Interest and Respondents.

---

COUNSEL

Gilbert T. Graham for Plaintiff and Appellant.

Jerome F. Coleman, City Attorney, P. Lawrence Klose and Berliner, Cohen & Biagini for Defendants and Respondents.

Richard R. Patch, William H. Orrick III, Coblentz, Cahen, McCabe & Breyer, Thomas J. LoSavio, Jean N. Yeh, Low, Ball & Lynch and J. Michael Matthews for Real Parties in Interest and Respondents.

## OPINION

**ELKINGTON, J.**—Plaintiff Anza Parking Corporation appeals from a judgment of the superior court denying its application for a writ of mandate requiring the City of Burlingame to "enforce" a conditional use permit, and for damages against the city.

We have read and considered the briefs of the parties and of the real parties in interest, and we consider, as requested, our records on an appeal numbered A037668, from a judgment in a separate action of Anza Parking Corporation for damages against the City of Burlingame. And for the reasons we now relate, we shall affirm the judgment from which the instant appeal is taken.

We state the material facts of the case which appear to be uncontroverted.

The Anza Shareholder's Liquidating Trust was the owner of land (the land) in the City of Burlingame. It leased the land to an affiliate, Anza Parking Corporation, as an airport parking facility, which lease was to terminate January 6, 1986. Anza Parking Corporation applied to the City of Burlingame for a conditional use permit authorizing use of the land as a parking facility. The conditioned use permit was granted. Among other things its conditions were (1) that it would terminate in 10 years, May 15, 1988, and (2) that it was *"nontransferable"* by Anza Parking Corporation. Anza Parking Corporation thereupon commenced its parking operations.

Thereafter the Anza Shareholder's Liquidating Trust, then the land's owner, sold parcels of the land to persons who, with their successors, consisted of more than 20 individuals or corporate entities (the new owners). And Anza Parking Corporation (the land's lessee) subleased the land to, or entered into a management contract with, one whom we shall call the Metropolitan Parking Corporation, which thereupon continued parking operations on it. Thereafter some of the new owners had a dispute with Anza Parking Corporation over the rent which was to be paid. They endeavored, unsuccessfully, to negotiate a new lease with Anza Parking Corporation. They then entered into a new lease with Metropolitan Parking Corporation which by its terms commenced January 7, 1986, following expiration of the existing lease to Anza Parking Corporation.

Anza Parking Corporation thereupon demanded of the City of Burlingame that it *"enforce"* the "nontransferable" condition of the conditional use permit. The City of Burlingame took no action on the demand, apparently because its attorney advised that the "nontransferable clause" was

invalid. Anza Parking Corporation then commenced the instant action, by which it sought a writ of mandate compelling the City of Burlingame to *"enforce"* the above noted "nontransferable" condition of the conditional use permit. By its judgment the superior court denied the requested relief. The instant appeal is from that judgment.

■ The principal issue of the appeal may be stated as: Does a municipal zoning authority have *power* to condition a conditional use permit upon its nontransferability by the person to whom it is granted?

We state the applicable law.

It is the policy of this state that all property, and personal rights of any kind, are freely transferable, unless expressly prohibited by law. (Civ. Code, §§ 1039, 1040, 1044; *Cockerell* v. *Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292 [267 P.2d 16]; *Mission Valley East, Inc.* v. *County of Kern* (1981) 120 Cal.App.3d 89, 96 [174 Cal.Rptr. 300]; *United California Bank* v. *Behrends* (1967) 251 Cal.App.2d 720, 725 [60 Cal.Rptr. 128].)

And it is widely held that a conditional use permit creates a right which runs with the land; it does *not* attach to the permittee.

Government Code section 65909 provides: "No local governmental body, or any agency thereof, may condition the issuance of any . . . use permit . . . [¶] . . . for any purpose not reasonably related to the use of the property for which the . . . use permit is requested." Contrary local law or rulings "are deemed *inoperative* [§ 65909]." (Our italics; *Wiltshire* v. *Superior Court* (1985) 172 Cal.App.3d 296, 305 [218 Cal.Rptr. 199].)

*County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510 [138 Cal.Rptr. 472, 564 P.2d 14]: "Such permits run with the land . . . ."

"A . . . special or conditional use permit runs with the land, [and] with respect to the privileges intended to be conferred, the permittee is chargeable with knowledge of existing zoning ordinances [and statutes] at the time of the issuance and of the fact that county or city officers and agents have no *power* to go behind them." (Our italics, 66 Cal.Jur. 3d, Zoning and Other Land Controls, §§ 128, 129, pp. 473-474.)

*Cohn* v. *County Board of Supervisors* (1955) 135 Cal.App.2d 180, 184 [286 P.2d 836]: " 'A variance for the use of property in a particular manner is not personal to the owner at the time of the grant, but is available to any subsequent owner . . . .' "

The same rule prevails throughout the nation. We quote from a few authorities of sister states.

*Olevson* v. *Zoning Board of Review* (1945) 71 R.I. 303 [44 A.2d 720, 722]: "It seems clear, speaking generally, that under the terms of the statute and of the ordinance applicable in this cause the respondent zoning board of review is given a broad discretion in fixing conditions and safeguards when variances or exceptions are permitted. That discretion, however, is not unlimited. We have already held that any such condition and safeguard must be reasonable. . . . The variation or exception as granted is made applicable to Duffy . . . himself, instead of being attached to the use of the Thompson property as such. It appears that the decision of the board, rather than providing for a condition relating to that real estate in connection with the type of zoning to be applied thereto, is an attempt to grant Duffy himself a license to operate a boarding and rooming house in the Thompson property as long as he so desires, but that such license is to be entirely personal to him and is to terminate when he ceases to so occupy such property. [¶] In our opinion it does not come within the proper functions of the respondent board to grant the variation or exception in question solely on the basis of the above condition because it amounts really to a mere license or privilege to an individual and does not relate in its proper sense to the use of the property and the zoning thereof. We find, therefore, that the condition imposed by the respondent board is, under all the circumstances and by reason of its nature, *beyond the power* of the board to impose in connection with the granting of the variation or exception." (Our italics.)

*Vlahos* v. *Little Boar's Head District* (1958) 101 N.H. 460 [146 A.2d 257, 260]: "It is generally recognized that zoning restrictions are *constitutional*[*ly*] subject to the qualification that they cannot be unreasonable or arbitrary. . . . In the present case the variance was not only conditional, which it had a right to be, but the conditions included the requirement of an annual permit, which was also revocable and nontransferable because limited to the specific owner or lessee who was operating the premises for that particular year (condition 9). While this condition might make zoning enforcement easier and has administrative merit, it has been pointed out that it would place the emphasis on the regulation of the person rather than the land, and tend to make it an *ad hominem* privilege rather than a decision regulating the use of property. Although the decisions are not numerous, it has been held that *such a restriction is invalid* because zoning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises by whom such use is to be exercised." (Our italics.)

*Guenther* v. *Zoning Board of Review* (1956) 85 R.I. 37 [125 A.2d 214, 217]: "The action of the zoning board is concerned basically with the land and its use and not with the person who owns or occupies it."

*State* v. *Konopka* (1963) 119 Ohio App. 513 [28 Ohio.Ops.2d 133, 200 N.E.2d. 695, 696]: "We list herein a few of the cases from jurisdictions which have heretofore determined that a grant of a variance is not a personal license to the then property owner, but is a right that runs with the land.

"Clements v. Steinhauer, 15 A.D.2d 72 at 76 [221 N.Y.S.2d 793, 90 A.L.R.2d 1025]; Mastrati v. Strauss, 75 R.I. 417 [67 A.2d 29]; Cohn v. County Board of Supervisors of the County of Los Angeles, 135 Cal.App.2d 180 [286 P.2d 836]; Hickerson v. Flannery, 42 Tenn.App. 329 [302 S.W.2d 508]; Redford Moving & Storage Co. v. City of Detroit, 336 Mich. 702 [58 N.W.2d 812]. See, also 8 McQuillin on Muncipal Corporations (Third Ed.Rev.), 379-380, Section 25.163, and authorities there quoted."

*Clements* v. *Steinhauer* (1961) 15 App.Div.2d 72 [221 N.Y.S.2d 793, 797, 92 A.L.R.2d 1025]: "The trial court correctly held that the permit authorized public parking. The court also correctly held that the permit enured to the benefit of subsequent owners of the premises . . . ."

*Room & Board Homes & Family Care Homes* v. *Gribbs* (1976) 67 Mich.App. 381 [241 N.W.2d 216, 218]: "The Board may not impose restrictions unrelated to the use of the land."

In our research we have encountered no contrary authority.

The above authority is reasonable, and persuasive. Applying it here, we hold that a conditional use permit may *not* lawfully (and perhaps may *not* constitutionally—see *Vlahos* v. *Little Boar's Head District, supra,* 146 A.2d 257, 260) be conditioned upon the permittee having no right to transfer it with the land. Such a condition, if imposed, is beyond the *power* of the zoning authority, and *void.*

■  Anza Parking Corporation also contends that such a defense to its action is barred under Government Code section 65907, for failure to bring an action testing the validity of the use permit's condition within either 90 or 180 days of its issuance.

Government Code section 65907, as relevant here, provides: "[A]ny action or proceeding to attack, review, set aside, void or annul any [conditional use permit] . . . or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person

unless such action or proceeding is commenced within 180 days after the date of such decision. Thereafter, all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations."

It will be remembered that another statute, Government Code section 65909, states: "No local governmental body, or any agency thereof, may condition the issuance of any . . . use permit . . . [¶] for any purpose not reasonably related to the use of the property for which the . . . use permit is requested."

Such code sections must be read together and "are to be regarded as blending into each other and constituting but a single statute." (*In re Porterfield* (1946) 28 Cal.2d 91, 100 [168 P.2d 706, 167 A.L.R. 675].) So treating the statutes, it is manifest that section 65907 relates to conditions lying within the *discretion* of a city's zoning authority to make, and *not* to matters beyond its *power*, and declared *unlawful*. Surely a void and unlawful, or unconstitutional, use condition will not reasonably be perpetuated for failure of someone to comply with section 65907.

■ Anza Parking Corporation next contends that the City of Burlingame and real parties in interest are equitably estopped from raising the invalidity of the above noted condition of the conditional use permit.

Initially we note that: "Generally the doctrine of estoppel is disfavored." (*International Assn. of Fire Fighters* v. *City of San Leandro* (1986) 181 Cal.App.3d 179, 182 [226 Cal.Rptr. 238].) And it will be applied only where the party claimed to be estopped has obtained some *unconscionable* advantage. (*In re Marriage of Recknor* (1982) 138 Cal.App.3d 539, 546 [187 Cal.Rptr. 887, 34 A.L.R.4th 805].) Here, as noted, Anza Parking Corporation was undisturbed in its occupancy of the land throughout the entire term of its lease.

And the doctrine will not be applied against "a public entity," "if to do so would effectively [as here] nullify a 'strong rule of policy, adopted for the benefit of the public' . . . ." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].) And the existence of estoppel is a *question of fact*, primarily for the trial court. (*Parke* v. *Franciscus* (1924) 194 Cal. 284, 297 [228 P. 435]; *Gump* v. *Gump* (1940) 42 Cal.App.2d 64, 69 [108 P.2d 21].)

Under the facts and circumstances of the case before us, we discern no judicial error in respect of Anza Parking Corporation's claim of estoppel.

■ "Anza Parking Corporation's final appellate contention is that: "The court erred in awarding real parties attorneys' fees *in the amount requested*." (Our italics.)

Real party in interest Metropolitan Parking Corporation relied upon this contractual clause: "If litigation or proceedings in the nature of litigation or preparation therefor are commenced between the parties in respect to the premises or operations thereon, the prevailing party shall be entitled, in addition to such other relief as may be granted by a court or other body, to a reasonable sum for attorney's fees which sum shall be determined by such court or other body or by agreement of the parties."

And real parties in interest, new owners, relied upon the following contractual provision: "In the event of litigation or court proceeding between lessor and lessee arising under this lease, the prevailing party in such litigation or court proceeding shall be entitled to a reasonable attorneys' fee."

Under these contractual provisions the real parties in interest reasonably became entitled to their attorney fees.

And responding to Anza Parking Corporation's instant contention, the attorney fees allowed by the court, to *all* real parties in interest were approximately $14,000, which sum appears to have been "*the amount* requested," and under oath it was alleged that such attorney fees were "necessarily incurred."

The amount of the award of attorney fees is within the sound discretion of the trial court." (*County of Madera* v. *Forrester* (1981) 115 Cal.App.3d 57, 65 [170 Cal.Rptr. 896].) Here the award seems reasonable. We perceive no abuse of that discretion.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied November 24, 1987, and appellant's petition for review by the Supreme Court was denied January 20, 1988.