Rockingham,
No. 4686.

VLAHOS REALTY COMPANY, INC.

*v.*

LITTLE BOAR'S HEAD DISTRICT & a.

Argued October 7, 1958.

Decided November 28, 1958.

*Boynton, Waldron & Dill* (*Mr. Boynton* orally), for the plaintiff.

*William P. Fowler* and *Edward R. Hale* and *Neil L. Lynch* (of Massachusetts) (*Mr. Fowler* orally), for the defendants.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the intervenors.

KENISON, C. J. In this declaratory judgment proceeding (RSA 491:22) the plaintiff seeks to ascertain the validity of a conditional variance applicable to its premises which is subject to a one-year nontransferable permit issuable to it or its lessee and renewable if the owner or lessee complies with all the conditions of the permit. The validity of such conditional variance, coupled with an annual permit, is a matter of first impression in this jurisdiction. *Cf. Mater* v. *Dover,* 97 N. H. 13, 16. A good nutshell introduction to this problem without, however, any accompanying solution, is found in Horack and Van Nolan, Land Use Controls (1955) *p.* 184: "The most controversial condition limits the variance to a specific person. Although courts usually strike down such a limitation on the ground that it is unreasonable and discriminatory and the grant of a special privilege, in the actual administration of a zoning ordinance there is much justification for this restriction because of

a board's confidence in the good reputation, capacity, and reliability of particular persons. On the other hand, isn't the argument valid that zoning ordinances apply to land and not to individuals?"

Since 1955 the plaintiff owned and its lessees have operated premises for the sale of ice cream, dairy products and other items specified in annual permits issued pursuant to a conditional variance granted by the board of adjustment of defendant district in 1947. The 1947 variance which was granted to one Sawyer, a predecessor in title of the plaintiff, was subject to the issuance of a permit by the zoning inspector limited to one year and "renewable annually if complied with by the appellant [Sawyer]." Among the several conditions listed in the permit was No. 9 which reads as follows: "Said permit shall be non-transferable, shall not be applicable to any lessee, and may be revoked or modified at any time for non-compliance with the conditions thereof, or if the stand in question shall be so operated as to cause injury or offense to the neighborhood." Since 1947 the various owners of the premises or their lessees have been issued an annual permit subject to substantially the same conditions including No. 9. The present proceeding was brought in September, 1957, when the defendant zoning inspector advised the plaintiff's lessee that he had violated certain provisions in the permit and indicated that he would not renew the permit.

A chronological summary of the events leading up to the present litigation is necessary for an understanding of the problem. At the time the defendant adopted its zoning ordinance in 1937, pursuant to special legislation (Laws 1937, c. 265), the plaintiff's predecessor in title, one Sawyer, was operating an ice cream stand located in the residential zoning district as a pre-existing nonconforming use under the provisions of the zoning ordinance. This commercial enterprise continued through the year 1941 but was discontinued during the years 1942 through 1945 because of World War II. In 1946, the plaintiff's predecessor in title Sawyer obtained a conditional variance, subject to the issuance of a conditional permit by the zoning inspector. In 1947, a further conditional variance and conditional permit were issued to Sawyer and the premises were operated by him or his tenants through 1952. In 1952, Sawyer appealed from the ruling of the zoning inspector refusing him permission to sell coffee and sandwiches at his ice cream stand, which was denied. No appeals were taken from the rulings of the board of adjustment.

In 1953, Sawyer conveyed the premises to the plaintiff's predecessor in title who in turn conveyed to the plaintiff in 1955. From 1953 to 1957 the premises were operated by the owners or their lessees subject to the terms of the conditional variance granted in 1947 and the nine conditions attached to the individual annual conditional permits issued by the zoning inspector.

While the zoning statute contains no express provision permitting conditions to be attached to a variance, the board of adjustment is given broad powers "and may make such order, or decision, as ought to be made." RSA 31:72 IV. This statutory language is inclusive enough to authorize the power to attach reasonable conditions to the granting of variances as was intimated but not decided in *Mater* v. *Dover*, 97 N. H. 13, 16. A large number of cases sustain the right to attach conditions to the grant of a variance where it is necessary to do so in order to observe the spirit of the zoning ordinance. Anno. 168 A. L. R. 13, 60; Rhyne, Municipal Law 881 (1957); Reps, Legal and Administrative Aspects of Conditional Zoning Variances and Exceptions, 2 Syracuse L. Rev. 54 (1950). Some authorities maintain that it is "common practice" to grant conditional variances which "should usually be upheld unless the conditions are beyond the authority of the board, are outside the Law or unless they are plainly unreasonable." 2 Metzenbaum, Law of Zoning, *p.* 957 (1955).

It is generally recognized that zoning restrictions are constitutional subject to the qualification that they cannot be unreasonable or arbitrary. 8 McQuillin, Municipal Corporations, *s.* 25.05; 1 Yokley, Zoning Law and Practice (2d *ed.* 1953) *s.* 26. In the present case the variance was not only conditional, which it had a right to be, but the conditions included the requirement of an annual permit, which was also revocable and nontransferable because limited to the specific owner or lessee who was operating the premises for that particular year (condition 9). While this condition might make zoning enforcement easier and has administrative merit, it has been pointed out that it would place the emphasis on the regulation of the person rather than the land, and tend to make it an *ad hominem* privilege rather than a decision regulating the use of property. Although the decisions are not numerous, it has been held that such a restriction is invalid because zoning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises by whom such use is to be exercised. *Olevson* v. *Narragansett Zoning Bd.*, 71 R. I.

303; Green, The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance, 29 N. C. L. Rev. 245, 276-278 (1951). Our statute gives municipalities adequate powers and remedies for violation of the zoning ordinances and restrictions (RSA 31:88) but there is no indication either in this section or in any other part of the statute that they were to include the authority to issue a yearly permit to a specific person which would place the burden on the owner of the property or his lessee to convince the board of adjustment that the conditions of the variance or the permit had been complied with during the year. *Cf. Kelley* v. *Board of Zoning Appeals,* 126 Conn. 648. See *Hannigan* v. *Murdock,* 47 N. Y. S. 2d (Sup. Ct.) 855, 858; *Zahodiakin Eng. Corp.* v. *Zoning Bd. of Adjustment,* 8 N. J. 386. We conclude that condition 9 was beyond the statutory power of the board of adjustment and invalid, and that the device of an annual nontransferable permit good only for a specific person and subject to revocation is not sanctioned by the zoning statutes of this state as the price of granting a variance.

In order not to cast a cloud of infirmity on conditional variances, which attach to the land and not to the person (*Mastrati* v. *Strauss,* 75 R. I. 417), reference is made to the other conditions applicable to the premises. Condition 1 limited the retail sales principally to those articles that were sold previously under the pre-existing nonconforming use by the plaintiff's predecessor in title. This was proper even though additional articles could be sold without danger to public health, welfare or safety. Such limitation on nonconforming uses is one method of preventing variances from nibbling away at the main objectives of zoning which looks to the future. *Selligman* v. *Western & Southern Life Ins. Co.,* 277 Ky. 551; *Zweifel Mfg. Corp.* v. *City of Peoria,* 11 Ill. (2d) 489. Conditions 2 and 3 required that the premises be kept neat and clean and that receptacles be provided for refuse and papers. These were reasonable restrictions as was condition 4 which called for adequate toilet facilities on the premises.

Condition 5 restricted the lights and signs to conform substantially with the previous nonconforming uses and was unobjectionable. *St. Patrick's Church* v. *Daniels,* 113 Conn. 132. Condition 6 regulating the closing hours at 11 p. m. was presumptively valid for the same reason. Condition 7 requiring a fence or railing in the rear of the premises was reasonable. *Morris* v. *Zoning Board of Review,* 52 R. I. 26; *St. Patrick's Church* v. *Daniels, supra.*

Condition 8 prohibiting radios or loud speakers disturbing to abutting owners was likewise presumptively valid.

The use of a declaratory judgment to test the legality of a zoning restriction allegedly in excess of the jurisdictional authority of the zoning power is not without precedent in this state. *Faulkner* v. *Keene*, 85 N. H. 147; *Brady* v. *Keene*, 90 N. H. 99. While the plaintiff could stand by and await prosecution or injunctive proceedings by the municipality, this is not an exclusive method of settling the controversy. Anno. 174 A.L.R. 853, 854; Zoning in New England, 36 B. U. L. Rev. 354, 489 (1956). The law does not always say to "the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool is to eat it." Borchard, The Constitutionality of Declaratory Judgments, 31 Col. L. Rev. 561, 589. In this declaratory judgment proceeding, as would be the situation in an appeal (RSA 31:78), the party seeking to set aside a decision of the zoning board of adjustment has the burden of establishing that the board's decision is unreasonable or unlawful; and all findings of the board on questions of fact are deemed prima facie lawful and reasonable. *Jadda* v. *Manchester*, 100 N. H. 150; *Gelinas* v. *Portsmouth*, 97 N. H. 248.

It is urged that the plaintiff has operated its premises under a variance and therefore is now estopped to question it. A similar contention in a recent analogous case was rejected in *Publico* v. *Building Inspector of Quincy*, (Mass. 1957) 142 N. E. (2d) 767, 769.

In conclusion we hold that the variance granted by the board of adjustment is valid except as to condition 9 and the requirement of an annual renewal of the permit which were beyond the statutory power of the board.

*Remanded.*

All concurred.