Rockingham
No. 98-786

DAVID A. POPE

v.

LITTLE BOAR'S HEAD DISTRICT & a.

December 15, 2000

*John A. Bell*, of Keene, by brief and orally, for the plaintiff.

*Donahue, Tucker & Ciandella*, of Exeter (*Charles F. Tucker* and *Robert M. Derosier* on the brief, and *Mr. Derosier* orally), for the defendant.

DALIANIS, J. Defendant Little Boar's Head District appeals a decision of the Superior Court (*Gray*, J.) finding the application of a residential zoning ordinance to be discriminatory in nature. The plaintiff, David A. Pope, cross-appeals, arguing that: (1) the trial court erred in fashioning its remedy; and (2) section VIII (B) of the zoning ordinance illegally restricts property owners from intensifying a nonconforming use. Defendant Town of North Hampton did not participate in this appeal. We vacate and remand.

The plaintiff owns a small ice cream stand, the Beach Plum, in the Little Boar's Head District of the town of North Hampton. A prior owner operated the ice cream stand before the defendant zoned the area exclusively for residential use in 1937. At that time, the owner operated the business primarily as an outlet for his dairy products, but he also sold a limited variety of other items. After enactment of the zoning ordinance, he continued operating the business as a pre-existing nonconforming use.

Because of World War II, the ice cream stand closed from the fall of 1941 until 1945. Section 8, paragraph A of the then-existing zoning ordinance provided that a nonconforming use which was discontinued for a period of more than one year could not be reestablished. Because of the special circumstances of the war, however, the defendant gave the owners a conditional variance to reopen the ice cream stand in 1946. The defendant renewed this conditional variance in 1947. The conditions imposed included limiting the items that could be sold to those that were sold prior to the enactment of the 1937 zoning ordinance. Specifically, the variance provided in pertinent part:

> Said stand shall be restricted to the same uses only as were effective in both 1937 and in 1941, and only to the extent that they shall not be hereafter discontinued under the terms of the ordinance, that is principally as an outlet for products of appellant's dairy and only for the retail sale of appellant's ice cream, cream, milk, buttermilk, frappes, milk shakes, milk drinks, and other dairy products, and for the retail sale of: hot dogs, tonics, candy, popcorn, potato chips, peanuts, cigarettes, cigars, and chewing gum.

In 1958, Vlahos Realty Company, another prior owner, initiated a declaratory judgment action challenging the conditions of the 1947 variance. *See Vlahos Realty Co., Inc. v. Little Boar's Head District,* 101 N.H. 460, 146 A.2d 257 (1958). In *Vlahos Realty Co.,* we held that all of the conditions placed upon the 1947 variance were permissible except the condition requiring the owner to obtain an annual permit to operate the ice cream stand. *See id.* at 464-65, 146 A.2d at 260-61. In particular, we held that the condition which limited retail sales principally to those articles sold prior to the enactment of the 1937 ordinance was a permissible "method of preventing variances from nibbling away at the main objectives of zoning which looks to the future." *Id.* at 464, 146 A.2d at 261.

The plaintiff, aware of the history of the property and the conditions placed upon its use, acquired the ice cream stand in 1968. In both 1985 and 1993, he sought a variance to expand his menu items. The zoning board of adjustment (board) denied both requests, and he did not appeal.

Andrews-by-the-Sea, a small restaurant located just a few hundred yards from the plaintiff's establishment, operates as a nonconforming use in the Little Boar's Head District residential zone. In 1971, the owners of Andrews-by-the-Sea unsuccessfully applied to the board for permission to install a "take-out" window. More than twenty years later, however, in the summer of 1992, the board, after an informal meeting, granted Andrews-by-the-Sea a one-year permit for a take-out window. Further, in a July 28, 1993, letter, the building inspector and commissioner, without conducting a hearing, gave Andrews-by-the-Sea permission to operate the take-out window permanently.

In August 1996, the plaintiff applied to the board for a special exception pursuant to section VIII (B) of the zoning ordinance to expand his menu items to include coffee, tea, hot chocolate, hamburgers, cheeseburgers, muffins, doughnuts, pastries, and cold sandwiches. The plaintiff did not seek to make any physical alteration to his building, but claimed that he was seeking to intensify his nonconforming use. The board denied the plaintiff's application because it did not "conform with Section V, Residential Zoning Uses with reference to Section VIII, Non-Conforming Uses." Section V restricts the area to residential uses, with limited exceptions. Additionally, section VIII (B) provides:

ADDITIONS TO NON-CONFORMING BUILDING. Additions may be made to any building that does not conform with the provisions hereof, provided that such additions,

> when made pursuant to the provisions of a written permit to be issued as a special exception by the Board of Adjustment . . . will in the opinion of the Board cause no added injury or offense to the neighborhood.

The plaintiff appealed the board's decision to the superior court, arguing that: (1) it was arbitrary, unreasonable, and unlawful for the defendant to omit from its zoning ordinances a mechanism by which a property owner could receive permission to intensify, as opposed to expand physically, a nonconforming use; and (2) the defendant applied the zoning ordinance in a discriminatory manner because it allowed his competitor, Andrews-by-the-Sea, to install a take-out window.

The superior court did not rule upon the plaintiff's first argument. Instead, the court ruled that by allowing Andrews-by-the-Sea to install a take-out window "without notice, hearing, or any of the procedural niceties required by law," while strictly enforcing the zoning ordinance as to the plaintiff's application, the defendant enforced its zoning ordinance in a discriminatory manner. To remedy the situation, the court ordered the defendant to either "allow the expanded sales requested by the plaintiff or enforce its ordinance as against all businesses similarly situated and in direct competition with the plaintiff."

"Because this is a zoning case, the standard for review of this court is not whether we would find as the trial court did, but whether the evidence reasonably supports the finding. We will therefore uphold the trial court's decision on appeal unless it is not supported by the evidence or is erroneous as a matter of law." *Hussey and U.S. Aggregates, Inc. v. Town of Barrington*, 135 N.H. 227, 231, 604 A.2d 82, 84 (1992) (quotation and citations omitted).

■ We first decide whether the trial court erred in finding that the defendant discriminatorily enforced the zoning ordinance by denying the plaintiff's application for a special exception while allowing a competitor to install a take-out window. The trial court found that

> [w]hat the District denies the plaintiff legally, it has given his direct, (and only), competitor absolutely illegally. Such is not the stuff of a free society. While zoning laws are a legitimate device for sound land management and control, they are useless unless equitably enforced. In this matter, they are not equitably enforced at all and such selective enforcement has had a direct negative impact on the

plaintiff. The Court does not find the denial of expanded food sales to be per se unreasonable. However, when the actions of the District officials are considered as regards the other establishment, the Court finds the application of the ordinance to be discriminatory in nature.

A trial court's finding that a municipality selectively enforced its zoning ordinance in a discriminatory manner requires evidence that any discrimination was conscious and intentional. *See Alexander v. Town of Hampstead*, 129 N.H. 278, 283, 525 A.2d 276, 280 (1987). Absent from the trial court's decision is a finding that any alleged discrimination was conscious and intentional. The plaintiff argues that we can infer conscious and intentional discrimination from the court's decision. We disagree. Accordingly, we vacate and remand.

Upon remand, the trial court should determine whether the defendant discriminatorily enforced its zoning ordinance, and if so, whether such discrimination was conscious and intentional.

Although the parties and the trial court state that the plaintiff operates his business as a nonconforming use, the plaintiff actually operates under a conditional variance. A nonconforming use is "a preexisting use of land that is permitted to continue after the enactment of a zoning ordinance which prohibits the use." 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 8.01, at 113 (1993); *see also* RSA 674:19, :24, IV (1996).

> The concept of a nonconforming use is to be distinguished from that of a variance in that, while the former involves the use of a structure prohibited by the zoning regulations but permitted because of its existence at the time that the regulations are adopted, the latter is a prohibited use or structure that is permitted by the zoning board pursuant to its authority under applicable regulations.

83 AM. JUR. 2D *Zoning and Planning* § 624 (1992). "A board of adjustment has the power to modify conditions previously imposed with respect to the grant of a variance." *Id.* § 934. Thus, under the circumstances of this case, rather than seeking a special exception to the zoning ordinance, the proper procedure for the plaintiff may have been to seek a modification of the variance.

Further, the trial court should examine whether Andrews-by-the-Sea was entitled to install its take-out window as a matter of right without needing formal approval from the defendant.

The parties suggest that Andrews-by-the-Sea is also a nonconforming use. A property owner who seeks to expand or "intensify"

a nonconforming use internally may do so as a matter of right if such intensification will not result in a substantial change to the use's effect on the neighborhood. *See Ray's Stateline Market, Inc. v. Town of Pelham*, 140 N.H. 139, 144, 665 A.2d 1068, 1071-72 (1995). Thus, what the trial court labeled as illegal — the defendant's actions of condoning the installation of the take-out window by Andrews-by-the-Sea without following any "procedural niceties" — may have been permissible as a matter of right.

In light of our discussion above, we need not address the remaining issue raised by the plaintiff. We vacate the trial court's decision and remand for further proceedings in accordance with this opinion.

*Vacated and remanded.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.