DECISION
Consolidated before this Court are appeals from two decisions of the Rhode Island Coastal Resources Management Council (CRMC). Bonnet Shores Beach Club Condominium Association, Inc. (Bonnet Shores)[1] appeals (1) the decision of the CRMC Executive Director to grant a permit extension and (2) the CRMC's decision declining to find the permit extension invalid. Both appeals are pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
Seaside Realty Trust (Seaside) owned the development rights under the Bonnet Shores Beach Club Declaration of Condominium. On March 3, 1989, Seaside obtained an Assent from the CRMC, permitting it to construct additional cabana units at the Bonnet Shores condominium complex.[2]
Among other stipulations and conditions, the Assent stated "all work must be completed within three years. . . ." Construction was not completed within this period, however. On April 28, 1994, the Executive Director of CRMC granted Seaside a one-year permit extension.[3] On April 6, 1995, the Executive Director granted Seaside another one-year permit extension. The parties agree that Seaside applied for a third extension on April 4, 1996, but CRMC records do not show whether or not it granted the request. The Executive Director issued Seaside another extension on May 9, 1997.
Shortly after the May 1997 extension, Heath Management Company (Heath) acquired all of Seaside's development rights by a Mortgagee's Deed. The CRMC continued to grant permit extensions to "Seaside Realty Trust," however. On April 20, 1999; March 18, 1999; and May 25, 2000, the CRMC issued Seaside three more permit extensions, respectively, for the periods of May 9, 1998 to May 9, 1999; May 9, 1999 to May 9, 2000; and May 9, 2000 to May 9, 2001. Overall, the Executive Director of CRMC granted a total of six permit extensions for construction at the Bonnet Shores complex, excluding the questionable 1996 extension.
Upon the Executive Director's granting of the May 25, 2000 extension, Bonnet Shores filed a complaint on June 21, 2001, seeking judicial review of the permit extension. The following day, Bonnet Shores filed a petition with the CRMC for a declaratory ruling on the validity of the May 2000 permit extension. The CRMC heard the matter on September 26, 2000; November 28, 2000; January 23, 2001; and March 13, 2001. On August 6, 2001, the CRMC issued a decision that declined making a declaratory ruling.[4] Consequently, on September 4, 2001, Bonnet Shores filed a second complaint, timely appealing the CRMC's decision. Bonnet Shores's first and second complaint are consolidated before this Court.
Bonnet Shores's first complaint, C.A. No. P.C.00-3255, requests judicial review of a final administrative agency decision pursuant to G.L. 1956 § 42-35-15. It requests this Court to reverse and vacate the decision of CRMC's Executive Director that granted the permit extension. Bonnet Shore's second complaint, C.A. No. P.C.01-4615, appeals the CRMC's decision declining to declare the permit extension invalid. Bonnet Shores asks the Court to reverse the decision and grant the declaratory ruling. In support of its complaints, Bonnet Shores argues that the May 2000 permit extension is invalid because
 1. The CRMC continued to issue the extensions to "Seaside Realty Trust" after Heath acquired the development rights;
 2. There is no evidence that the CRMC conducted a site inspection, a prerequisite to issuing an extension, prior to issuing the May 2000 extension;
 3. The Assent expired in 1996 because there is no evidence any extension was granted that year;
 4. Assuming the 1996 extension was validly issued, it would have expired on April 28, 1997, thus voiding the extension granted on May 9, 1997, and all subsequently issued extensions;
 5. Assuming it was validly issued, the 1999 extension expired on May 9, 2000 and could not be extended "retroactively" on May 25, 2000;
 6. The first extension, which was issued in 1994, was invalid because the Assent had expired in 1992 and was not extended prior to its expiration.
 STANDARD OF REVIEW
Section 42-35-15(g) of the General Laws governs this Court's review of a contested administrative agency decision. This section of the Administrative Procedures Act (APA) provides that:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) ln excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing determinations of an administrative agency, this Court sits as an appellate court with a limited scope of review. Therefore, the Superior Court justice does not weigh evidence and the credibility of witnesses as to questions of fact. Center for Behavioral Health v.Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety Appliances Co. v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). The Court merely reviews the record in order to determine whether there is legally competent evidence to support the agency decision. Turner v. Department of EmploymentSecurity, Board of Review, 479 A.2d 740, 742 (R.I. 1984). This requisite level of evidence is ""such relevant evidence that a reasonable mind might accept as adequate to support a conclusion . . . [which is] an amount more than a scintilla but less than a preponderance." Caswell v.George Sherman Sand Gravel Co., R.I., 424 A.2d 646, 647 (1981). Moreover, the Court may not substitute its judgment for that of the agency. Bunch v. Board of Review, R.I. Dept. of Employment and Training,690 A.2d 335, 337 (R.I. 1997). This principle holds true even where the court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Rhode Island PublicTelecommunications Authority v. Rhode Island State Labor RelationsBoard, 650 A.2d 479, 485 (R.I. 1994).
When the decision of an agency is based upon a question of law, however, the Court reviews those findings de novo. Johnston AmbulatorySurgical Associates. Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000). That is, questions of law are not binding and may be reviewed to determine what the law is and its applicability to the facts. Narragansett WireCo. v. Norberg, 376 A.2d 1, 6 (R.I. 1977). The Rhode Island Supreme Court, however, voices one caveat to this general rule: a court should give deference to an agency's interpretation of a statute "that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v.R.I. Dept. of Labor and Training Bd. of Review, 822 A.2d 164, 169 (R.I. 2003); see also Pawtucket Power Associates Limited Partnership v. City ofPawtucket, 622 A.2d 452, 456-57 (R.I. 1993) (deferring to an agency's interpretation of a statute it administers "even when the agency's interpretation is not the only permissible interpretation that could be applied"). Additionally, proper deference to an agency's interpretation of its own regulations requires a court "to presume the validity and reasonableness of that construction until and unless the party challenging its interpretation prove otherwise." State v. Cluley,808 A.2d 1098, 1104 (R.I. 2002). Deference to an agency interpretation should not rise to the level of blind allegiance, however. CitizensSavings Bank v. Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985).
 JURISDICTION
A threshold issue, which neither party argues but which this Court raises sua sponte, is this Court's jurisdiction to entertain Bonnet Shores's complaints. An axiomatic rule of civil procedure is that subject-matter jurisdiction cannot be waived and may be raised at any time in a proceeding. Bradford Associates v. R.I. Division of Purchases,772 A.2d 485, 488 (R.I. 2001). Section 42-35-15(a) of the APA provides:
 "[a]ny person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." (Emphasis added.)
A "contested case" is defined as a "proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." G.L. 1956 § 42-35-1(c) (emphasis added); see also G.L. 1956 § 42-35-14
(license renewal preceded by notice and opportunity for hearing is a contested case).[5] For an administrative matter to be considered a contested case, the law must require the state to provide a hearing. Pinev. Clark, 636 A.2d 1319, 1322, 1324-25 (R.I. 1994); Property AdvisoryGroup. Inc. v. Rylant, 636 A.2d 317, 318 (R.I. 1994). Therefore, for the present matter to be a "contested case," a hearing must be required by the law applicable to CRMC permit extensions.
Rule 5.11 of the CRMC Management Procedures governs permit extensions. This rule allows the Executive Director to grant administratively an extension for projects already underway. No hearing is required. Under the CRMC rules, a hearing is required and a matter becomes a contested case when the CRMC receives a formal written objection and/or a request for a hearing. CRMC Mgmt. Procedures Rule 1.2; see also G.L. 1956 § 42-35-14 (contested case requirements apply when license renewal requires notice and opportunity for hearing). Furthermore, no section of the CRMC enabling act, 46-23-1 et seq., requires a hearing for a permit renewal or otherwise considers it a contested case. Accordingly, the APA does not permit judicial review of the CRMC Executive Director's decision to grant or deny a permit extension unless a party filed an objection or requested a hearing on the matter. In the instant case, nothing in the record indicates a party requested a hearing or objected to the May 2000 permit extension request. Consequently, this Court has no authority to exercise jurisdiction over Bonnet Shore's first complaint, C.A. No. P.C.00-3255, which is predicated on the Executive Director's issuance of the May 2000 Assent extension. Cf. Bradford Associates, 772 A.2d at 488-89 (finding no jurisdiction over Rhode Island Division of Purchases' decision to suspend contractor because hearing not required).
This Court, however, has subject matter jurisdiction over Bonnet Shore's second complaint, C.A. No. P.C.01-4615, which appeals the CRMC's decision that declined to issue a declaratory ruling on the validity of the May 2000 permit extension. Section 42-35-8 of the APA likens agency rulings that dispose of petitions for declaratory rulings to orders in contested cases. The CRMC rules also provide that its "decisions on declaratory ruling petitions shall be treated as final Council actions in contested cases for the purposes of judicial review." CRMC Mgmt. Procedure Rule 12.1. Thus, pursuant to G.L. 1956 § 42-35-15, this Court has jurisdiction to review the CRMC decision that Bonnet Shores appeals in its second complaint.
 STANDING TO OBTAIN EXTENSIONS
Bonnet Shores argues that all permit extension after Heath acquired the development rights in 1997 are invalid because CRMC issued the extensions to "Seaside Realty Trust," which retained no interest in the development rights. Bonnet Shores reasons that only the holder of the legal interest is entitled to apply for or hold an Assent or any extension thereof. Bonnet Shores cites CRMC regulations requiring proof of ownership in CRMC applications, along with zoning ordinance cases that require a variance applicant to have some right, title, or interest in the property. Bonnet Shores also argues that any agency or contractual relationship between Heath and Seaside is insufficient to allow Seaside to hold the Assent or request or receive any of the extensions on Heath's behalf.
CRMC Assent No. 88-4-18, issued in March of 1989, approves site plans entitled "`Bonnet Shores Beach Club,' dated 8/87 — 4/88, by Christoph Associates." It allows for construction, maintenance, and additions at the existing beach club facility, "[l]ocated at Plat N-S, lot 631, 632, 632A, 633, Bonnet Shores Beach Club, Bonnet Point Road, Narragansett." The language of the Assent indicates that the overarching concern is the location and design of the construction. It does not provide a personal license for a specific individual; nowhere in the Assent is a stipulation or condition limiting its application to a specific interest holder. Indeed, any such limitation would be of doubtful legality. See Mastrati v. Strauss, 75 R.I. 417, 419-20, 67 A.2d 29, 30-31 (1949) (finding ordinance variance inures to the benefit of the land, and cannot attach solely to the title holder); see also Olevson v. ZoningBd. of Review of Narragansett, 71 R.I. 303, 307-08, 44 A.2d 720, 722 (1945) (noting zoning board is fundamentally concerned only with matters relating to real estate and use made thereof, not with the person who owns or occupies the land).[6]
Likewise, the extensions are not limited to a particular title holder. The extensions issued in 1997, 1998, and 1999 merely provide that "Coastal Resources Management Council Assent No. 88-4-18, is granted a one year extension. . . ." The extension for the year 2000 contains the same language, as well as the following language describing the construction and location to which it applies: "Assent Number for file 88-4-18 for the construction of cabana and bathhouse units, located at the Bonnet Shores Beach Club, Lots 631, 631, 632A and 633 in the town of Narragansett, RI." Although the extension notice or letter is addressed to Seaside, the Court does not find this irregularity to be material, especially given the Assent extension's purpose and relation to the land. The language and nature of the Assent make it applicable to a particular parcel of land and the design plans particularly approved for that parcel; it does not attach to the permitee, Seaside. Such benefits are therefore available to Heath, the successor in title of the party to whom CRMC granted approval. See supra footnote 6 and accompanying text.
Additionally, testimony at the CRMC hearing, along with the CRMC brief submitted for this appeal, indicates that CRMC considers such Assents to "run with the land." Proper deference to the CRMC's interpretation of its own regulations requires this Court to presume that CRMC validly interpreted that its permits run with or follow the land. See Cluley, 808 A.2d at 1104 (R.I. 2002). This interpretation is neither plainly erroneous nor inconsistent with the purposes of the act under which the regulation is made. See Arnold, 822 A.2d at 169; Pawtucket PowerAssociates Limited Partnership, 622 A.2d at 456-57. Similar to a zoning board, which is fundamentally concerned only with real estate use, as held in Olevson, 71 R.I. at 307-08, 44 A.2d at 722, the CRMC, as empowered under G.L. 1956 § 46-23-1 et seq., is fundamentally concerned only with matters relating to coastal resources and use made thereof, not particular title holders. Consequently, the CRMC's extensions after Heath acquired the development rights are not invalid simply because Seaside Realty Trusted is named in the Assent extension.
The present case is distinguishable from the zoning variance standing cases on which Bonnet Shores relies. In the standing cases, our Supreme Court has held that applicants for a zoning variance must have some right, title, or interest in the land. See, e.g., Packham v. Zoning Bd.of Review of Cranston, 103 R.I. 467, 470-72, 238 A.2d 387, 388-90 (1968); Staller v. Cranston Zoning Bd. of Review, 100 R.I. 340, 340-41,215 A.2d 418, 419 (1965); Parise v. Zoning Bd. of Review of Cranston,92 R.I. 338, 339-40, 168 A.2d 476, 476-77 (1961). Mere holders of options to purchase do not have a sufficient interest, while a party who has contracted to purchase property does have a sufficient interest. Packhamv. Zoning Bd. of Review of Cranston, 103 R.I. at 470-72, 238 A.2d at 389-90 (citing Tripp v. Zoning Bd. of Review of Pawtucket, 84 R.I. 262,123 A.2d 144 (1956) and Shulman v. Zoning Bd. of Appeals of Stamford,226 A.2d 380 (Conn. 1967)). In such lines of cases where a party is held not to have a sufficient interest, it has always been a prospective owner or developer applying for the variance who has yet to receive any right, title, or interest. In the present case, however, the situation is reversed. Here, Seaside indisputably held an interest, and then it held Assent extensions after transferring its interest to a successor.
An analogous case is the 1958 New York case of Feneck v. Murdock,181 N.Y.S.2d 441 (1958). In Feneck, a corporation applied to the Superintendent of Buildings for leave to erect a gasoline service station. Parties filed objections and a board for the agency heard the case but denied the application. Id. at 443. The applicant corrected some documents, reapplied, and the board eventually granted the variance. Petitioners allege error, arguing that when the second application was presented, the corporation had dissolved and no longer owned the premises. Id. at 443-44. Stockholders had acquired the property at the time the board finalized its decision. Nevertheless, the Feneck court affirmed the board's granting of the variance, citing (1) a variance runs with the land and is not a personal license to a landowner, (2) the conveyance prior to the board's decision created a situation where the corporation/applicant continued to act as the agent of the new owners, reasoning that one need not be a property owner to be entitled to the benefits of a variance, and (3) the board did not object to the transfer but instead requests the court to affirm its decision. Id. at 445. The court reasoned that "[t]o remit this matter, merely to require the board to perform a ministerial act by indicating a change in ownership, wouldin nowise affect its determination upon the merits and serve no useful purpose since the variation follows the land and not the owner." Id. at 445 (emphasis added).
The instant case is comparable: (1) the CRMC granted the Assent/extensions for a particular parcel of land and not a particular owner, as discussed supra (2) a predecessor in title [Seaside] received the Assent/extension while no longer the owner; (3) for the benefit of a transferee [Heath]; (4) for whom it continued to act on its behalf, as an agent. Furthermore, the CRMC does not object to the transfer, but in fact supports its granting of the assent and the extensions. Additionally, the change in ownership does not affect the CRMC's determination on the merits; credible testimony by the CRMC Executive Director at the hearing indicates that the CRMC conducted site inspections, found compliance with CRMC conditions, and determined an extension was appropriate. CRMC Hearing Transcript (Tr.) at 141-43.
Additional authorities indicate that similar relationships or agency-type relationships are a sufficient interest for standing to obtain variances or permits. "It is generally held that the owner of property may assign his right to seek a variance of the zoning ordinance affecting it or may designate agents to prosecute it for him." W. C. Crais, III, Annotation, Zoning: Who May Apply for Variance. SpecialException, or Use Permit, or Appeal from Denial Thereof, 89 A.L.R.2d 663, § 7 (1963) (2003 Supp.). To hold that an owner cannot transfer or assign the right to apply for a variance, or appoint an agent to make an application, "would make the right depend on the identity of the owner instead of the situation of the property and the facts and circumstances of the case." Id. at § 4b (citing Arant v. Board of Adjustment,271 Ala. 200 (1960)). A New Jersey court found that a permit to erect a building is not invalid despite it being issued in the name of an architect employed by the owner because the record indicated that the architect acted as the agent of the owner. Id. at § 7 (citingProtomastro v. Board of Adjustment, 3 N.J. Super. 539 (1949)); see alsoid. at § 2 (noting owners may assign rights to pursue variance or designate agents tacitly or expressly).
Such propositions are not contrary to Rhode Island law. In Tripp v.Zoning Bd. of Review of Pawtucket, 123 A.2d 144 (R.I. 1956), our Supreme Court found that a party did not have standing to obtain a variance to build a funeral home. The Court, however, reasoned that the applicant was nothing more than the holder of an option to purchase, and that nothing in the record indicated the existence of a relationship between the applicant and the owner or permitted an inference of agency. Id. at 147. In the instant case, the CRMC found sufficient evidence on the record to indicate "the necessary relationship between Seaside and Heath for continuity of ownership in the assent extension process."[7] CRMC Decision at 2; CRMC Memorandum of Facts and Law at 11. Heath produced an affidavit averring that Seaside and Heath maintain an ongoing relationship whereby Seaside assists Heath with the Bonnet Shores project. Also, the fact that Seaside obtained the extensions for Heath's benefit evidences the existence of a relationship. For these reasons, the CRMC's granting of the extensions and refusal to invalidate the extensions on this basis is not affected by error of law or clearly erroneous in view of the reliable, probative, and substantial evidence of record.
 SITE INSPECTION
Additionally, Bonnet Shores argues that CRMC's issuance of the May 25, 2000 assent extension is invalid because there is no written record that the CRMC conducted a site inspection prior to issuing the extension. Bonnet Shores cites a then-existing section of CRMC's Management Procedures that, in pertinent part, states "[e]xtensions shall be granted for projects already underway only if it has been determined through site inspection by staff that the work accomplished is in complete compliance with the conditions of approval established by the Council." CRMC Mgmt. Procedure § 5.11. The CRMC maintains that written confirmation of inspections is not required, and Bonnet Shores cites no provision requiring written confirmation.
Assuming without deciding that a site inspection is a prerequisite to issuing a permit, Bonnet Shores has not met its burden in showing CRMC failed to conduct the site inspections. Proper deference to CRMC's interpretation requires the Court to presume that written confirmation is not required. See State v. Cluley, 808 A.2d 1098, 1104 (R.I. 2002) (holding courts should presume the validity and reasonableness of agency's construction of its own regulations unless the party challenging proves otherwise). Additionally, Bonnet Shores proffered no evidence that the CRMC failed to conduct such an inspection. Therefore, Bonnet Shores did not meet its burden; the Rhode Island Supreme Court has held that officials are entitled to the presumption that their duties have been properly performed until the contrary is proven. Signore v. Zoning Bd. ofReview of Barrington, 199 A.2d 601, 605 (R.I. 1964) (implicit in the granting of a building permit is the presumption that the agency complied with regulations and conducted a site inspection). In fact, the CRMC Executive Director testified that the agency conducted a site inspection and found no violations of Assent conditions prior to issuing the extensions. CRMC Hearing Tr. at 142-43. Consequently, Bonnet Shores has not shown that the permit is invalid due to an alleged failure to conduct site inspections.
 THE MISSING LINK
Bonnet Shores also argues that the May 2000 extension is void because there is no documentation of a 1996 extension. The previous 1995 extension expired on April 28, 1996, while the next extension in CRMC records is an extension for May 9, 1997 to May 9, 1998. Bonnet Shores's argument raises two issues: (1) whether a 1996 extension existed, and (2) if no such extension existed, would its absence void future extensions. This Court, however, need not reach the latter question. The record indicates that Bonnet Shores did not meet its burden in showing the absence of a 1996 extension.
As noted above, official acts carry a presumption of having been properly performed until the contrary is proven. Elliott v. Town ofWarren, 818 A.2d 652, 657 (R.I. 2003); Signore, 199 A.2d at 605. The proper issuance of an extension includes an examination of the permitting, the site, and the site work. CRMC Hearing Tr. at 141; CRMC Mgmt. Procedure § 5.11. Thus, in order to presume that the CRMC properly issued the May 1997 extension, it is presumed that the CRMC properly examined the record and would have taken action against Seaside or Heath for operating without a permit for 1996. Consequently, it is implied in CRMC's granting of the 1997 extension that Seaside or Heath was operating with an extension for 1996.
Even absent such a presumption, the record permits a finding that a permit existed for 1996. Seaside introduced a cancelled check that referenced an assent extension which was dated a week before the 1995 permit expired. Additionally, the CRMC Executive Director testified that the agency acted upon every extension request filed, but that the records are open to the public and sometimes lost. CRMC Hearing Tr. at 154. Accordingly, the allegedly missing 1996 extension did not void the year 2000 permit extension. Thus, the CRMC's refusal to invalidate the permit extension on this basis is not clearly erroneous.
 GAP BETWEEN EXTENSIONS
Bonnet Shores further argues that the May 2000 extension is void because, on two prior occasions, there was a gap between the previous permit's expiration and the issuance of the subsequent extension. It alleges that such a gap invalidates all future extensions.[8]
First, Bonnet Shores argues that even if a 1996 extension existed, it would have expired prior to the issuance of the May 9, 1997 extension. Bonnet reasons that a 1996 extension would have run from April 28, 1996 to April 28, 1997; this is one year following the 1995 extension, which was valid from April 28, 1995 to April 28, 1996. It therefore claims that a gap existed between the 1996 permit's expiration on April 28, 1997 and the next permits issuance on May 9, 1997.
Bonnet Shores makes a similar argument for the permit issued on May 25, 2000. The extension issued in 1999 ran from May 9, 1999 to May 9, 2000. On May 25, 2000, the CRMC issued the next extension, which ran from May 9, 2000 to May 9, 2001.
Bonnet's argument is wholly without merit. Administrative agency permits do not expire while an application for renewal is pending, provided the licensee files a timely and sufficient application for renewal. G.L. 1956 § 42-35-14(b); see also G.L. 1956 § 42-35-1(d) (indicating "license" in section 14(b) includes "any agency permit"). Nothing in the record indicates that Seaside and Heath failed to file a timely and sufficient application for renewal. Consequently, the gaps between the extensions did not invalidate Heath's permit extensions, and thus, the CRMC's refusal to invalidate the extensions on this basis is not clearly erroneous.
 THE 1994 EXTENSION
A provision in the Assent stated that "all work must be completed within three years . . . of the issue date, March 3, 1989. However, Seaside obtained its first extension five years later in April 1994. Bonnet Shores argues that the CRMC had no authority to issue the 1994 extension or any extension thereafter because the Assent had expired in March of 1992. This argument fails for the following reasons.
 Laches and Equitable Estoppel
A party may successfully invoke the laches doctrine when another party's (1) unexplained and inexcusable delay in asserting a right (2) substantially prejudices the party against whom a right is now asserted.Hyszko v. Barbour, 448 A.2d 723, 727 (R.I. 1982); 4 Ziegler, RathkopfsThe Law of Zoning and Planning § 65:26 (2001). Laches may involve a situation in which a landowner has standing to contest the issuance of a permit on nearby land but fails for an unreasonable period of time to initiate an action to review or annul the permit. 4 Ziegler, RathkopfsThe Law of Zoning and Planning § 65:26.
Equitable estoppel is similar to laches, but equitable estoppel works to prevent a governmental authority from acting due to a party's good faith reliance. 4 Ziegler, Rathkopfs The Law of Zoning and Planning
§ 65:26; Greenwich Bay Yacht Basin Associates v. Brown, 537 A.2d 988, 991 (R.I. 1988). Equitable estoppel requires a party to have (1) incurred substantial obligations or expenditures (2) in good faith reliance, (3) upon an act or omission of the government, (4) making it highly inequitable to enforce a regulation. 4 Ziegler, Rathkopfs The Law ofZoning and Planning § 65:29 (2001); Jones v. Rommell, 521 A.2d 543, 545-46 (R.I. 1987).
In the present matter, either laches or equitable estoppel is independently sufficient to protect the year 2000 extension from invalidity on an alleged 1994 defect. Laches prevents Bonnet Shores from challenging the validity of Heath's year 2000 permit extension based on a defect in Seaside's first permit renewal in 1994. The record shows an unexplained and inexcusable delay by Bonnet Shores that prejudiced Seaside and Heath. Bonnet Shores sat silently as the CRMC granted extension after extension, year after year. Bonnet Shores offers no explanation or excuse for the delay; it merely offers that laches is not a bar because the subject of its complaint is the May 2000 extension that it promptly appealed. The record indicates that this reasoning is flawed. While Bonnet Shores promptly appealed the CRMC's 2000 renewal decision, it is, in bootstrap-type fashion, relying on a stale 1994 basis for the instant appeal.
In addition to the delay, Heath's substantial prejudice is obvious. For example, in reliance on the extensions, Seaside conducted renovations, Heath acquired title to the development rights and continued construction at the site, and all but 156 of the 1069 additional cabana units were left to be built. CRMC Hearing Tr. at 146. Therefore, laches prevents Bonnet Shores from contesting the permit renewal based on a 1994 defect.
For similar reasons, equitable estoppel would have prevented CRMC from invalidating the year 2000 extension on the basis of a defective 1994 extension. Probative and substantial evidence contained in the record show that Seaside and Heath incurred substantial obligations and expenditures in good faith reliance upon CRMC's issuance of the extensions. In reliance on CRMC's continual granting of extensions, Seaside and Heath engaged in renovations and constructed hundreds of additional cabana units at the Bonnet Shores complex. Therefore, it would be contrary to general equitable principles to invalidate the Assent after years of reliance. See Jones v. Rommell, 521 A.2d 543, 545 (R.I. 1987) ("equity immunizes a building permit from cancellation when the property owner incurs substantial obligations in good-faith reliance on the issuance of the permit"); accord Shalvey v. Zoning Board of Review ofWarwick, 99 R.I. 692, 210 A.2d 589 (1965).
 Necessity of Extensions
With respect to the permit extensions, the operative CRMC rule provides in pertinent part:
 Permit Extensions
 "[w]here the Council has issued a permit to undertake an activity in accordance with this Program, said permit shall require such activity licensed or permitted thereunder to be undertaken within (3) years from the date of issuance. In the event an applicant or his agents cannot undertake said activity within the three (3) year permitted time, the applicant may, prior to the expiration of said time, petition the Council in writing for an extension. Extensions shall be granted for projects already underway only if it has been determined through site inspection by staff that the work accomplished is in complete compliance with the conditions of approval established by the Council. Further, in cases where little work has been accomplished or change in conditions raised environmental concerns, the Council may require reapplication. The Executive Director may administratively grant an extension for a period of time of up to one (1) year from the expiration date of the permit." CRMC Mgmt. Procedures Rule 5.11.
The CRMC Executive Director testified that based on Rule 5.11, the CRMC has always interpreted that permits require a project to be undertaken or begun within three years, and as long as the construction conforms to the Assent's conditions, extensions are not necessary. CRMC Hearing Tr. at 141-46. The Executive Director testified that because of the rule's conflict with the Assent's three-year completion window, he issued the extensions "out of an abundance of caution."[9] CRMC Hearing Tr. at 143-45.
According to the CRMC interpretation, Rule 5.11 does not prescribe a three year time limit — or any time limit whatsoever — once construction begins. Although the rule is susceptible to other interpretations, this Court does not find the CRMC interpretation clearly erroneous or unauthorized.[10] See Pawtucket Power Associates LimitedPartnership v. City of Pawtucket, 622 A.2d 452, 456-57 (R.I. 1993) (deferring to agency interpretation of a statute it administers even when the interpretation is not the only permissible interpretation); Arnoldv. R.I. Dept. of Labor and Training Bd. of Review, 822 A.2d 164, 169 (R.I. 2003). By not necessarily requiring extensions after three years, CRMC has not exceeded its mandate under the enabling act. Section 46-23-16
of the Rhode Island General Laws authorizes the CRMC to issue permits for "any term of years or in perpetuity." (Emphasis added.) Therefore, the CRMC interpretation is not clearly erroneous, and its issuance of extensions beginning five years after the Assent date does not void the permit, as extensions are not necessary.[11] Consequently, the CRMC's refusal to invalidate the extensions on this basis is not clearly erroneous.
 CONCLUSION
After reviewing the entire record, this Court finds that the Coastal Resources Management Council did not abuse its discretion by declining to rule on the validity of assent extensions for file no. 88-4-18. The agency's granting of the May 25, 2000 permit extension and refusal to find it invalid is not clearly erroneous, is not affected by error of law, and is not in violation of statutory or regulatory provisions. Substantial rights of Bonnet Shores Beach Club Condominium Association have not been prejudiced. Accordingly, the decisions of the Coastal Resources Management Council are affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Members of the Bonnet Shores Beach Club Condominium Association, the plaintiff-appellant, consist of persons owning units in the Bonnet Shores Beach Club Condominium.
[2] Pursuant to G.L. 1956 § 46-23-1 et seq., the CRMC is charged with developing policies, programs, and regulations in an effort to preserve, protect, develop, and restore the coastal resources of Rhode Island. The CRMC has authority to approve, reject, and set conditions for construction in coastal regions.
[3] Rule 5.11 of the CRMC Management Procedures authorizes the Executive Director to "administratively grant" an extension for a period of up to one year from the permit's expiration. Rule 5.11 was revised and renumbered 5.12 in April 2001. The revised permit extension rule is not applicable to this case, as it became effective after the relevant time period.
[4] For matters properly before the CRMC for a declaratory ruling, the CRMC is empowered to issue a binding declaratory ruling, issue a non-binding declaratory ruling, or issue no declaratory ruling. CRMC Mgmt. Procedure Rule 12.1.
[5] For the purposes of the Administrative Procedures Act, the term, "license," includes "any agency permit." G.L. 1956 § 42-35-1(d).
[6] Ostensibly, the CRMC Assent and continual extensions are somewhat akin to zoning variances, and it is widely recognized throughout the country that variances run with the land and that such benefits are available to the applicant's successors in title. Stop and ShopSupermarket Co. v. Board of Adjustment of Springfield, 744 A.2d 1169, 1177-78 (N.J. 2000) (collecting cases). The Court of Appeal of California has similarly found that "a conditional use permit creates a right which runs with the land; it does not attach to the permitee." Anza ParkingCorp. . v. City of Burlingame Planning Commission, 195 Cal.App.3d 855, 858 (1987). The Court goes on to cite the following supporting cases of sister states. Vlahos v. Little Boar's Head District, 101 N.H. 460 (1958) (variance limited to a specific owner is "invalid because zoning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises by whom such use is to be exercised."); State v. Konopka, 119 Ohio App. 513 (1963) (grant of a variance is not a personal license to the then property owner, but is a right that runs with the land); Clements v. Steinhauer,221 N.Y.S.2d 793, 797 (1961) (permit authorizing public parking inures to the benefit of subsequent owners of the premises).
[7] The CRMC's finding of a sufficient ownership nexus also satisfies the proof of ownership requirement for CRMC applications. Assuming, but not deciding, that the application did not strictly comply with CRMC regulations, the Court is deferential to the CRMC's finding of a satisfactory assent application. See State v. Cluley, 808 A.2d 1098, 1104 (RI. 2002) (holding courts should presume the validity and reasonableness of agency's construction of its own regulations); cf Elliott v. Town ofWarren, 818 A.2d 652, 656-5 7 (RI. 2003) (relaxed standards not condoned but may be upheld absent radical departure from acceptable practices or violation of enabling legislation).
[8] Again, Bonnet Shores's argument raises the question of whether an irregularity with an extension voids all future extensions as a mater of law. The Court need not reach this issue, however.
[9] The Executive Director further testified that extensions were not necessary because the building envelope had been constructed and that interior work is not a primary concern of the CRMC. CRMC Hearing Tr. at 141-46.
[10] Although CRMC interprets "undertaken" to mean "begun," another possible interpretation is that "undertaken" is intended to mean "completed." This is consistent with the language in the Assent and the newly revised Rule, both of which require projects to be "completed" within three years; albeit, interpreting "undertaken" as "completed" is contrary to the common understanding of the word. "Undertake" is defined as "1. to take upon oneself, as a task, performance, etc.; attempt . . . 2. to promise, agree, or oblige oneself . . . 3. to warrant or guarantee . . . 4. to take in charge; assume the duty of attending to . . . 5. (Archaic) to engage oneself by promise; give a guarantee, or become surety." Random House Unabridged Dictionary 2064 (2nd ed. 1987).
Regardless, the sentence beginning "[e]xtensions shall be granted for projects already underway" contradicts the CRMC construction. The CRMC interpretation would render this sentence a nullity because the phrase contemplates extensions for projects underway, while the CRMC interpretation provides that once begun, extensions are not necessary. CRMC Hearing Tr. at 143-44.
[11] This decision does not address the revised and renumbered rule on permit extensions, Rule 5.12. Rather, this decision is limited to CRMC Management Procedure Rule 5.11, as it existed prior to the April 15, 2001 revision.