Filed 12/27/23  Swenson v. County of Siskiyou CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| STANLEY SWENSON, | C096942 |
| Plaintiff and Appellant, | (Super. Ct. No. SCCVCV2200143) |
| v. | |
| COUNTY OF SISKIYOU et al., | |
| Defendants and Respondents. | |

Plaintiff and appellant Stanley Swenson, representing himself in propria persona, filed an action for declaratory relief in the trial court against defendants and respondents the County of Siskiyou, the Siskiyou County Planning Department, and the Siskiyou County Planning Commission (collectively the County).  Swenson's first amended complaint (FAC) sought a declaration that a use permit issued to his predecessors in interest authorized him to conduct surface mining operations on his property in Siskiyou County pursuant to the Surface Mining and Reclamation Act of 1975 (the Act) (Pub. Resources Code, § 2710 et seq.) and the relevant provisions of the Siskiyou County Code

1

(County Code). He also sought a declaration that the available administrative remedy--a determination as to whether he possessed the "vested right" to mine--was an inadequate remedy and consequently excused him from the requirement that he exhaust all available, nonduplicative administrative review procedures.

The County demurred to the FAC, arguing that Swenson failed to exhaust his administrative remedies and that there was no actual controversy. The trial court sustained the demurrer without leave to amend.

Swenson appeals from the judgment dismissing his action. He principally argues the vested rights determination procedure set out in the County Code was an inadequate remedy because his vested mining rights had already been established by a prior trial court decision and by an agreement between the County and Swenson's predecessor in interest, precluding the County from revisiting the issue. He adds that a vested rights determination could not grant him the relief he sought in the FAC.

We disagree and conclude that Swenson's vested mining rights have not yet been established, and that a vested rights determination is an adequate remedy requiring exhaustion because it could grant Swenson the equivalent of the relief he seeks in his declaratory relief action. Because Swenson's various other arguments similarly lack merit, we affirm the judgment.

## FACTS AND PROCEEDINGS

In reviewing an order sustaining a demurrer, we assume the factual allegations pleaded to be true and consider matters that may be judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) The following facts are alleged or are cognizable by judicial notice.

*Surface Mining Regulations in Siskiyou County*

In 1953, the Siskiyou County Board of Supervisors (Board) passed County Code Ordinance No. 256 (Ordinance No. 256), which required a use permit to conduct surface mining activities. In 1957, the Board passed County Code Ordinance No. 309

2

(Ordinance No. 309), which amended Ordinance No. 256 but retained the prohibition on "[s]urface mining, involving heavy power equipment" in districts zoned as "unclassified districts" unless a use permit had been obtained.

In 1975, the California Legislature enacted the Act, which required every surface mining operation to have a use permit, a reclamation plan, and approved financial assurances to implement the planned reclamation. (Pub. Resources Code, § 2770, subd. (a).) Financial assurances were required to "remain in effect for the duration of the surface mining operation and any additional period until reclamation is completed." (*Id.*, § 2773.1, subd. (a)(2).) The Act designated the County as the "lead agency" to enact local legislation establishing procedures for the approval of use permits to conduct surface mining operations in the county in accord with state policy. (*Id.*, §§ 2728, 2774.)

The Act was enacted with the knowledge that many miners had extant private property rights, and the Legislature wanted to avoid paying compensation therefor. (See Pub. Resources Code, § 2713; *Surface Mining Operations—Vested Rights—Permit, Reclamation Requirements,* 59 Ops.Cal.Atty.Gen. 641, 644-645 (1976).) Accordingly, the Act included a grandfather provision to avoid any property "takings" claims, which provided in part: "No person who has obtained a *vested right* to conduct surface mining operations prior to January 1, 1976 [the Act's operative date], *shall be required to secure a permit pursuant to this chapter* as long as the vested right continues and as long as no substantial changes are made in the operation except in accordance with this chapter." (Pub. Resources Code, § 2776, subd. (a), italics added.) That provision defined "vested rights" as follows: "A person shall be deemed to have vested rights if, prior to January 1, 1976, the person has, in good faith and in reliance upon a permit or other authorization, if the permit or other authorization was required, diligently commenced surface mining operations and incurred substantial liabilities for work and materials necessary for the surface mining operations." (*Ibid.*) Those with vested mining rights and who did not

3

have an approved reclamation plan were required to submit a reclamation plan to the lead agency no later than March 31, 1988.  (*Id.*, § 2770, subd. (b).)

As required by the Act, the Board adopted County Code chapter 10-5, entitled Surface Mining and Reclamation (*id.*, § 10-5.101 et seq.), the purpose of which was to "implement and supplement" the Act.  (*Id.*, § 10-5.101, subd. (a).)  Like the Act, the County Code prohibited surface mining operations "unless a use permit is obtained from, a reclamation plan has been submitted to and approved by, and financial assurances for reclamation have been approved by, the County for the operation pursuant to this chapter ([Public Resources Code] Section 2770[, subd.] (a)."  (County Code, § 10-5.108, subd. (a).)  The County Code defined " 'Permit' " as "any authorization from, or approval by, the County, the absence of which would preclude surface mining operations ([Pub. Resources Code] Section 2732.5)."  (*Id.*, § 10-5.103.)

As in the Act, County Code section 10-5.106, subdivision (a) included a grandfather rights provision for those with vested mining rights, which defined "vested rights" consistently with the definition in the Act.[1]  County Code section 10-5.107, entitled Use permits, reiterated that "a use permit shall be required for a surface mining operation which is not determined to be vested."

County Code section 10-5.106, subdivision (a) provided that a person claiming vested mining rights "must establish such a claim in a public hearing proceeding as

---

[1]  The vested rights provision read:  "No person who has obtained a vested right to conduct surface mining operations prior to January 1, 1976, shall be required to secure a use permit pursuant to this chapter as long as the vested right continues and as long as no substantial changes are made in the operation except in accordance with this chapter." (County Code, § 10-5.106, subd. (a).)  The County Code defined "vested rights":  "A person shall be deemed to have vested rights if, prior to January 1, 1976, he or she has, in good faith and in reliance upon a permit or other authorization, if the permit or other authorization was required and obtained, diligently commenced surface mining operations and incurred substantial liabilities for work and materials necessary for the surface mining operations." (*Id.*, subd. (b).)

4

required by this chapter." Subdivisions (g) and (h) of County Code section 10-5.106 established a procedure for determining the existence, nature, and scope of vested mining rights, the details of which we set forth in the Discussion, *post*.

*Mining and Permitting History on the Property*

In 1958 and without securing a permit, Swenson's predecessors in interest initiated a surface mining operation on the property at issue here (the property), which was located "[d]irectly behind the County gravel pit"; the property was zoned as an "unclassified district." Pursuant to the permit requirement in Ordinance No. 309, Swenson's predecessors in interest applied for a use permit in 1966 (the use permit). The application sought authorization to "Install and operate an asphalt hot plant," and, on the next line, "To manufacture aggregate & asphalt paving products." The planning commission issued a use permit to the applicant "to install and operate an Asphalt Hot Plant, as per his application." Swenson's predecessors in interest installed a hot mix asphalt plant and conducted surface mining operations on the property from 1966 until 1988.

In 1987, Swenson's predecessors in interest submitted a reclamation plan (Campbell reclamation plan).[2] The planning commission approved the plan in June 1987, although the basis for that approval does not appear in the record. In 1991, the County entered into an agreement with Earl Campbell to implement the plan. The agreement recognized that the plan was based on a permit, although, again, the agreement did not state the basis for the approval.

In 1993, the Board approved the release of the Campbell reclamation plan's financial assurance on the basis that the quarry had been successfully reclaimed.

---

[2] The Campbell reclamation plan is not in the record.

*Swenson's First State Court Lawsuit and Federal Civil Rights Lawsuit*

In 2002, Swenson notified the County of his intent to begin mining on the property pursuant to the use permit. Thereafter, the County terminated the use permit based on nonconforming use through an administrative determination without a hearing. In a letter to Swenson, the assistant planning director recited that the use permit authorized batch plant operation, in 1987 the planning commission authorized quarry operations for reclamation through approval of the Campbell reclamation plan, the Campbell reclamation plan acknowledged that mining was to cease but batch plant operation was to continue, a letter from Campbell in 1991 confirmed that mining had ceased in 1988 with no intent to resume mining operations, and the Board had approved the formal closure of the quarry and full reclamation of the site in 1993.[3] The letter concluded that the Board's 1993 action terminated Swenson's entitlement to surface mine on the property. The letter set forth that in 1994, Swenson applied for a zone change from "Rural Residential Agricultural" to "Light Industrial," and that the application described the property as "a reclaimed gravel quarry" and did not mention a batch plant facility. In 1995, the Board adopted an ordinance granting the zoning change, which rendered the operation of a batch plant a nonconforming use because batch plant operation was not an allowed use under the new classification.

In 2005, Swenson filed a complaint for declaratory relief, which sought declarations that the use permit ran with the land, was still valid, and could be used "for the uses specified in the Use Permit." (*Swenson v. County of Siskiyou* (Super. Ct. Siskiyou County, 2007, No. SCCVCV 05-0222) (*Swenson I*).)

In its statement of decision, the trial court noted the County's argument that an interest in a use permit is extinguished where a zoning change for the property has gone

---

[3] We take judicial notice of the existence of the letter and its content, but not the truth of the content. (*Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22.)

into effect, the use in question is nonconforming under the new zoning restriction, and the property owner has not exercised the use in question for more than one year. But the court determined that Swenson's predecessors in interest "acquired a vested right to use the land in accordance with the terms of the permit" by obtaining the use permit and subsequently operating an asphalt batch plant on the property, and that the use permit ran with the land (citing *Anza Parking Corp. v. City of Burlingame* (1987) 195 Cal.App.3d 855, 858). Accordingly, it concluded that the County "acted outside its authority in ruling that [Swenson's] right to use the property in question for the operation of an asphalt batch (hot) plant was extinguished . . . without affording [Swenson] his constitutional right to due process of law by means of a full and fair hearing."[4]

The trial court clarified that its decision was "based only on its determination that the County committed an error of law, namely, the County impermissibly rendered its decision without instituting revocation proceedings to provide the Plaintiff a fair hearing. Consequently, the court concludes that it is not in a position to base its decision on a review of evidence under any standard, since the County has not yet allowed a full presentation of evidence." It also clarified that "the Use Permit remains valid and in effect, and may not be invalidated without due process of law."

In 2008, Swenson filed a federal lawsuit for denial of his civil rights. (*Swenson v. Siskiyou County et al.* (E.D.Cal. Nov. 14, 2014, No. 2:08-CV-1675 KJM CMK).) In that case, the County argued in part that the use permit did not authorize surface mining operations. In January 2016, the parties stipulated to stay the case; the stipulation

---

[4] The County contends that *Swenson I*'s reference to a "vested fundamental right" was a reference only to the constitutional rights to notice and a hearing. But *Swenson I* unambiguously concluded that Swenson's fundamental vested rights were the rights conferred by the use permit, although it did not determine the *scope* of those rights, i.e., whether those rights included the right to mine the property.

7

recognized that Swenson intended to avail himself of county administrative processes and procedures for the purpose of conducting lawful mining activities.[5]

*Swenson's Second State Court Lawsuit*

Swenson applied to the County to amend and clarify the Campbell reclamation plan. The County responded via letter that Swenson was required to demonstrate his vested mining rights pursuant to County Code section 10-5.106, subdivision (g). The letter noted Swenson was entitled to operate an asphalt hot plant and to manufacture aggregate and asphalt paving products following the trial court's decision in *Swenson I*, but asserted that *Swenson I* did not address the legal effect of the use permit as it related to surface mining operations.

In August 2016, Swenson filed another complaint for declaratory relief against the County. (*Swenson v. Siskiyou County et al.* (Super. Ct. Siskiyou County, 2017, SCCVCV 16-0952) (*Swenson II*).) Swenson alleged there was no basis to require him to claim and secure a vested mining right because the court in *Swenson I* had already determined that he had a vested right under the use permit, and thus the issue before the court was the scope, not the existence, of that vested right. He sought a declaration that the use permit authorized surface mining operations, in addition to the right to operate an asphalt hot plant that had been determined by *Swenson I*.

The County demurred, arguing that Swenson was prohibited from seeking declaratory relief from the courts until he claimed vested mining rights and was denied. It argued the court's decision in *Swenson I* established only that Swenson had a vested right to use the land in accordance with the terms of the use permit, not that he had a vested mining right, and the scope of his vested rights must be determined in a vested rights proceeding before he could seek declaratory relief.

---

[5] On our own motion, we take judicial notice of the parties' stipulation. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

The trial court sustained the County's demurrer on three alternative grounds: (1) Swenson had failed to exhaust his administrative remedies; (2) there was no actual controversy giving rise to declaratory relief under Code of Civil Procedure section 1060; and (3) under Code of Civil Procedure section 1061, the court declined to exercise its power to grant declaratory relief until after the County has been given an opportunity to act (see, e.g., *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 744 [considering "whether the trial court abused its discretion in deciding to exercise its power to grant declaratory relief"]).

The court ordered the matter stayed until after the completion of the administrative process.

*The Current Case*

In February 2022, Swenson filed the complaint for declarative relief giving rise to the current appeal. The FAC, which is the operative complaint, alleged five causes of action for declaratory relief.

The first cause of action sought a declaration that the term "manufacture aggregate," as used in the use permit, authorized his predecessors in interest to conduct surface mining operations. The second cause of action sought a declaration that the use permit, issued before the Act was enacted, constituted a "permit" as defined by County Code section 10-5.103 and satisfied the requirement in County Code section 10-5.107 that "a use permit shall be required for a surface mining operation which is not determined to be vested."

The third, fourth, and fifth causes of action each sought a declaration that there were no administrative remedies requiring exhaustion. The third cause of action alleged that County Code section 10-5.106 was an inadequate remedy for the relief Swenson sought in the first two causes of action because it was a procedure for determining vested mining rights in the absence of a use permit, whereas he sought a determination that he possessed a valid use permit.

9

The fourth cause of action sought a declaration that a vested rights determination would be a "needless act" because Swenson was not claiming vested mining rights. It further alleged that even if a vested rights determination were required, the County was barred from making such a determination based on *Swenson I.*

Although not alleged in a separate cause of action, the FAC also claimed that pursuing administrative remedies would be futile because the County had already demonstrated how it would rule on Swenson's claim by arguing when opposing his federal civil rights claims that the use permit did not authorize surface mining operations.

The fifth cause of action sought a declaration that Swenson's vested mining rights did not need to be reestablished and could only be extinguished through a revocation proceeding.

*Demurrer*

The County demurred to the FAC. It argued that Swenson had failed to exhaust his available administrative remedies, his claims were barred by collateral estoppel because *Swenson II* already concluded that he failed to exhaust administrative remedies, and there was no actual controversy between the parties until Swenson exhausted his administrative remedies.

In opposition, Swenson argued that County Code section 10-5.106 did not require exhaustion because it was an optional or elective procedure for those who chose to claim vested mining rights, whereas he had "a judicially declared vested right" under *Swenson I.* He also argued that a vested rights determination itself would be "futile" (and thus excuse him from the requirement that he exhaust his administrative remedies) because the trial court in *Swenson I* already concluded he had such vested rights, and County Code section 10-5.106 was an inadequate remedy because it only provided the County with "investigatory powers."

The trial court sustained the demurrer without leave to amend on the alternative bases that Swenson had failed to exhaust his administrative remedies, and there was no

10

actual controversy giving rise to declaratory relief. The County filed a notice of entry of the order and on September 2, 2022, the trial court filed an order of judgment and dismissal.

Swenson timely filed a notice of appeal.[6] The case was fully briefed and assigned to the current panel in September 2023.

## DISCUSSION

We begin by noting that at various stages of this dispute, Swenson has advanced contradictory arguments as to the key issues in the case.

Swenson claimed in the FAC that the vested rights determination procedure is inadequate to grant him the relief he seeks because *he is not seeking vested mining rights*; instead, he is seeking a determination that the 1966 use permit (issued before the Act was operative) satisfies the Act's and the County Code's use permit requirements. In support, the FAC asserted that the County had *never made* a vested mining rights determination, but instead simply concluded that Swenson had a valid use permit.

Swenson claims on appeal, however, that the County *did make* a vested mining rights determination, deciding before entering into the 1991 agreement that Swenson had vested rights. Moreover, he argues *Swenson I* also determined he had vested mining rights. Thus, he concludes, the vested rights determination procedure is inadequate to grant him relief because *his vested mining rights are already established* and can only be revoked through a revocation proceeding.

We conclude that: (1) neither *Swenson I* nor the 1991 agreement established vested mining rights; and (2) while a vested mining rights determination cannot be

---

[6] Swenson's notice of appeal purported to appeal from the trial court's order sustaining the demurrer without leave to amend, but that order is not appealable. (*Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 651.) We will construe the appeal as taken from the order of dismissal, which is an appealable order. (*Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1310, fn. 2.)

11

applied to determine that Swenson has a valid use permit, it can grant him the functional equivalent of the relief that he seeks, namely, vested mining rights.

I

*Standard of Review*

A demurrer tests the sufficiency of the complaint as a matter of law, and it raises only questions of law. (Code Civ. Proc., § 589, subd. (a).) " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the [complaint] a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1251-1252.) "[T]he complaint must be liberally construed and survives a general demurrer insofar as it states, however inartfully, facts disclosing some right to relief." (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 22; see also *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1162 [we decide "whether a cause of action has been stated under any legal theory when the allegations are liberally construed"], disapproved of on another ground in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 948, fn. 12.) "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) On appeal, "the plaintiff bears the burden of demonstrating that the trial court erred" in sustaining the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.)

"Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp.*, *supra*, 4 Cal.5th at p. 162.) "[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified

12

by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

II

*Exhaustion of Administrative Remedies*

"[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.) " '[A]n administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures." ' " (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 382 (*Plantier*).) "The doctrine of exhaustion of administrative remedies may not be circumvented by bringing actions other than administrative mandamus such as actions for declaratory relief [citation] . . . .  Judicial intervention is premature until the administrative agency has rendered a final decision on the merits. Before seeking judicial review a party must show that he has made a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings." (*Bleeck v. State Board of Optometry* (1971) 18 Cal.App.3d 415, 432; see *Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 156 [controversy not ripe for adjudication " ' "until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties" ' "].)  The exhaustion requirement applies even when the administrative remedy is phrased in permissive, as opposed to mandatory, language. (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 577.)

Our Supreme Court "ha[s] described exhaustion of administrative remedies as 'a jurisdictional prerequisite to resort to the courts.' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.)  " 'The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination

13

until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).' " (*Ibid.*)  Thus, " '[e]ven where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency."  [Citation.]  It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review.' " (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501.)  Accordingly, an administrative remedy must be exhausted where a favorable administrative decision could provide the functional equivalent of judicial remedies.  (*Acme Fill Corp. v. San Francisco Bay Conservation etc. Com.* (1986) 187 Cal.App.3d 1056, 1064 [even though remedy before federal agency would not provide relief party desired, it could grant the relief sought in the action and thus must be exhausted].)  Absent an exhaustion rule, a litigant might have an incentive to "sandbag," i.e., to "avoid securing an agency decision that might later be afforded deference" by sidestepping an available administrative remedy.  (*Plantier*, *supra*, 7 Cal.5th at p. 383.)

There are multiple exceptions to the exhaustion requirement.  As relevant here, the doctrine does not apply when the administrative remedy is unavailable or inadequate. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217.)  For example, an administrative remedy is inadequate if it does not establish a clearly defined mechanism for submitting, evaluating, or resolving complaints by aggrieved parties (*Plantier*, *supra*, 7 Cal.5th at p. 384), or if seeking administrative remedies would be futile (*Ventura29 LLC v. City of San Buenaventura* (2023) 87 Cal.App.5th 1028, 1038).

"The 'failure to exhaust administrative remedies is a proper basis for demurrer.' " (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1379.)  "A complaint is . . . vulnerable to demurrer on administrative exhaustion grounds where the complaint's allegations,

14

documents attached thereto, or judicially noticeable facts indicate that exhaustion has not occurred and no valid excuse is alleged in the pleading to avoid the exhaustion requirement." (*Ibid.*) Whether administrative remedies have been exhausted in a particular case depends upon procedures applicable to the agency in question. (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 876.) We review de novo whether plaintiff complied with the doctrine of exhaustion of administrative remedies. (*Plantier*, *supra*, 7 Cal.5th at p. 380.)

### III

### *Adequacy of Administrative Remedies*

Swenson challenges the trial court's conclusion that he failed to exhaust his administrative remedies on three primary bases: (1) the County was barred from making a vested rights determination because Swenson's vested rights were established by *Swenson I* and the County's approval of the Campbell reclamation plan; (2) the vested rights determination procedure did not authorize the County to interpret ambiguous terms in the use permit and thus could not determine whether the use permit authorized surface mining operations; and (3) the vested rights determination procedure was inadequate because that procedure could determine only whether Swenson had vested mining rights excusing the permit requirement, whereas he sought a declaration that he possessed a valid use permit authorizing surface mining operations.

As we next explain, we conclude Swenson's vested mining rights were not previously established, and the vested rights determination procedure is an adequate remedy that could grant him the relief he seeks. Thus, no exception to the exhaustion of remedies requirement applies, and because Swenson has not yet exhausted his administrative remedies the demurrer was properly sustained.

A. *No Prior Determinations of Vested Mining Rights*

We turn first to Swenson's claim that *Swenson I* established his vested mining rights. At issue in *Swenson I* was whether the County violated Swenson's right to due

process by terminating the use permit without a hearing. *Swenson I* concluded it did. It determined that Swenson "acquired a vested right in the use of the land authorized by the Use Permit" and that the County "acted outside its authority in ruling that [Swenson's] right to use the property in question for the operation of an asphalt batch (hot) plant was extinguished by operation of [a county ordinance] without affording [Swenson] his constitutional right to due process of law by means of a full and fair hearing."

However, the *Swenson I* court did not specifically conclude that Swenson had a *vested right to conduct surface mining operations*. Indeed, Swenson concedes in his opening brief: "The only thing the Superior Court [in *Swenson I*] did not do at that time was declare what rights the 1966 Use Permit granted." Absent a determination that the scope of the rights authorized by the use permit included the right to surface mine, the County is not precluded from determining whether the use permit authorized surface mining and whether Swenson has vested mining rights.

Apparently recognizing the deficiency in his argument, Swenson contends the County was estopped from determining he does not have vested mining rights because he claimed in *Swenson I* that he had a vested right to surface mining, and the County did not refute that argument. But as we have discussed, at issue in *Swenson I* was whether the County deprived Swenson of his right to due process, not the scope of the rights authorized by the use permit.

Next, Swenson contends the County *presumably* determined that Campbell had vested mining rights, which it then memorialized when it approved the Campbell reclamation plan in 1991; as such, there has already been a vested rights determination.[7]

---

[7] Swenson is inconsistent as to when he contends this approval occurred. The FAC asserted the County approved the Campbell reclamation plan on June 3, 1987, and memorialized that approval in the 1991 agreement. On appeal, Swenson asserts without apparent support in the record that the approval occurred in 1988.

This contention directly contradicts the allegations in the FAC, which claimed "[n]o vested rights determination was done before the approval of the 1991 reclamation plan," and the County's approval of the reclamation plan followed its determination in 1987 that his predecessors in interest possessed a valid use permit. In the face of these contradictory factual assertions, and in the absence of any evidence demonstrating the basis for the County's approval of the Campbell reclamation plan, we cannot conclude that the County previously established Swenson's predecessors in interest's vested mining rights.

B. *Authority to Construe Written Documents*

Swenson claims a vested rights determination was an inadequate administrative remedy, excusing the exhaustion requirement, because that procedure did not authorize the hearing official to establish the scope of the rights authorized by the use permit. Specifically, he contends the procedure did not authorize the hearing official to interpret ambiguous terms in the permit in light of extrinsic evidence. We begin with an overview of the vested rights determination procedure.

Anyone claiming a vested mining right must "establish such claim in a public hearing proceeding" in which the claimant bears the burden of proof. (County Code, § 10-5.106, subd. (a); see *id.*, subd. (g)(1) ["burden of proving the existence and extent of the vested right shall be on the claimant"].) County Code section 10-5.106, subdivision (g) provides that a claim must include a map of the area on which vested mining rights are claimed, any maps identifying areas that were mined before or after January 1, 1976, and "[c]opies of all permits, or authorizations, or entitlements, both existing and prior, permitting claimant to conduct surface mining operations upon such property." (*Id.*, subd. (g)(3)(ii), (v).) The claim must also include a written statement supporting the basis for and scope or scale of the claim. (*Id.*, subd. (g)(3)(vi).) That statement could include extrinsic evidence "manifesting such intent and supporting the claim, including but not limited to: [¶] a. Evidence of the period of time, the scope or the scale of the

mining operations previously conducted, including, but not limited to, aerial photographs that provide evidence of the area upon which vested rights are claimed; [¶] b. Evidence of any expenses or financial liabilities incurred for work and materials to conduct surface mining operations of the scope or scale claimed; [¶] c. Evidence of compliance with all local land use or mining or ordinances, regulations, permits, authorizations and entitlements, both existing and prior, which govern or have governed the conduct of surface mining operations upon such property; and [¶] d. With respect to areas not mined prior to January 1, 1976, for which a vested right is being claimed under the 'diminishing assets doctrine', any and all objective evidence or other documentation showing an intention was established prior to January 1, 1976, to mine these areas." (*Id.*, subd. (g)(3)(vi)(a)-(d).)

County Code section 10-5.106, subdivision (h) details the review and hearing procedure. Subdivision (h)(1) explains that the planning commission is typically the hearing body for vested rights determinations, but that the claimant may request a "neutral, third party administrative hearing official." Following completion of the application and a written report produced by the planning division, the hearing official is required to hold at least one noticed, public hearing. (*Id.*, subd. (h)(2)-(5).)

The relevant information for evaluating a claim includes: "written or oral evidentiary statements or material demonstrating or delimiting the existence, nature and scope of the claimed vested rights. Such evidence shall include, but is not limited to, evidence of any permit or authorization to conduct mining operation on the property in question prior to January 1, 1976, evidence of mining activity commenced or pursued pursuant to such permit or authorization, and evidence of any zoning or land use restrictions applicable to the property in question prior to January 1, 1976." (County Code, § 10-5.106, subd. (h)(6).) At the conclusion of the hearing, the hearing official is required to identify the specific property upon which vested rights were established, and

the scope and nature of surface mining operations included within the established vested right or rights. (*Id.*, subd. (h)(7).)

The final determination recognizing vested rights "shall constitute acknowledgment that the specific surface mining operation identified upon the specific property or properties does not require a use permit pursuant to the County Code as long as the vested right continues and as long as no substantial changes are made in the operation except in accordance with this chapter. . . . If any recognized vested rights are waived or abandoned, the vested mining operations identified shall become subject to the use permit requirements of the County Code and [the Act]." (County Code, § 10-5.106, subd. (h)(8).)

In interpreting the meaning of the County Code, we look to the words themselves. If the language is clear and unambiguous, there is nothing to interpret, and there is no need for judicial construction. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082-1083.) Swenson claims there is no language in County Code section 10-5.106 that authorizes the hearing official to interpret the terms of a written document, what evidence would be required for the interpretation, or when extrinsic evidence would be required. But the plain language of County Code section 10-5.106 unambiguously requires the person claiming vested rights to submit the permit serving as the basis for the claim and a sworn statement describing the basis for the claim, accompanied by any supporting extrinsic evidence. While the County Code does not provide that the hearing official was authorized to interpret the terms of a use permit submitted in support of a claim, there is nothing to suggest that the hearing official is in any way precluded from reviewing submitted permits, construing their terms, considering any submitted extrinsic evidence, and rendering a determination regarding the claimant's vested rights based on the documentation submitted.

19

C. *Authority to Interpret County Ordinances*

Swenson contends the vested rights determination procedure was an inadequate remedy because it could not grant the relief he sought in the FAC's second cause of action, i.e., a declaration that he possessed a use permit as required by the Act and chapter 10-5 of the County Code. (Pub. Resources Code, §§ 2770, subd. (a), 2732.5; County Code, §§ 10-5.103, 10-5.107.) In other words, Swenson sought a declaration that the use permit issued to his predecessors in interest satisfied County Code section 10-5.103's definition of a "permit"--"any authorization from, or approval by, the County, the absence of which would preclude surface mining operations"--and therefore satisfied the requirement that "a use permit shall be required for a surface mining operation which is not determined to be vested." (County Code, § 10-5.107.)

An administrative remedy is not inadequate merely because it cannot grant the precise relief requested. Rather, an administrative remedy must be exhausted if it is capable of granting Swenson the functional equivalent of judicial remedies, thus disposing of the controversy and keeping the case out of the courts. (*Acme Fill Corp. v. San Francisco Bay Conservation etc. Com.*, *supra*, 187 Cal.App.3d at p. 1064; *Sierra Club v. San Joaquin Local Agency Formation Com.*, *supra*, 21 Cal.4th at p. 501; *Plantier*, *supra*, 7 Cal.5th at p. 383.)

Here, a vested rights determination could grant Swenson the functional equivalent of the relief sought by the FAC. Indeed, a determination that Swenson has vested mining rights, providing him with the right to surface mine his property, is exactly what he hopes to accomplish by this litigation. To underscore that point, we observe that Swenson contends (in the FAC and also on appeal) both that he possesses a valid use permit *and* that his vested right to mine has already been established. While we have disagreed with his arguments that his vested right to mine is already established, his arguments demonstrate that a favorable vested rights determination is what he seeks.

Moreover, if the hearing official in a vested rights determination were to conclude that Swenson does *not* possess a vested right to conduct surface mining operations, that determination would undoubtedly facilitate " ' " 'the development of a complete record that draws on administrative expertise and promotes judicial efficiency,' " ' " " ' "serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review" ' " (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 291), and have the potential to clarify and reduce the scope of litigation (*Plantier*, *supra*, 7 Cal.5th at p. 383). This is because such determination would require Swenson to submit evidence to support his mining claim, require the County to compile a report as to Swenson's right to mine, and require a neutral decisionmaker to establish the existence, nature, and scope of Swenson's vested mining rights, if any, or to explain why he lacks any such vested right.

Accordingly, because a vested rights determination could grant Swenson the relief he seeks while promoting the underlying purposes of the exhaustion doctrine, it is a remedy requiring exhaustion.

D. *Remaining Claims*

Swenson raises several other arguments, all of which lack merit. He argues the vested rights determination was an inadequate remedy because the County possessed merely supervisory or investigatory authority and could not resolve a complaint by an aggrieved party. We agree that a remedy is inadequate if it does not "establish[] clearly defined machinery for the submission, evaluation, and resolution of complaints by aggrieved parties" (*Rosenfield v. Malcolm* (1967) 65 Cal.2d 559, 566), but the vested rights determination procedure clearly provides that here. It authorizes a claimant to submit documentation and a statement supporting the claim (County Code, § 10-5.106, subd. (g)), requires the hearing official to render a determination after a noticed hearing (*id.*, subd. (h)), and provides the right to appeal that determination (*id.*, subd. (i)). The

21

vested rights determination provides for the submission, evaluation, and resolution of claims by those seeking such determinations.

We also reject Swenson's claim that exhaustion is not required because he has not availed himself of *any* administrative remedy, and the exhaustion requirement only applies to those who are already aggrieved by an administrative decision but have not pursued *remaining* remedies. This is incorrect. (See *Bleeck v. State Board of Optometry*, *supra*, 18 Cal.App.3d at p. 432 [judicial "intervention is premature until the administrative agency has rendered a final decision on the merits. Before seeking judicial review a party must show that he has made a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings"].) Swenson cannot circumvent the exhaustion requirement by simply refusing to engage in the administrative process available to him. (*Ibid.* [the "doctrine of exhaustion of administrative remedies may not be circumvented by bringing actions other than administrative mandamus such as actions for declaratory relief"].) "The exhaustion of administrative remedies doctrine 'bars the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all; it also operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to "exhaust" the remedy available to them in the course of the proceeding itself.' " (*Citizens for Open Government v. City of Lodi*, *supra*, 144 Cal.App.4th at p. 874.)

Swenson also argues the trial court abused its discretion when it sustained the demurrer because the court "was not aware of what remedy" it was requiring Swenson to exhaust. He points to the court's comment made at the hearing after sustaining the demurrer. After the court ruled, Swenson requested clarification as to what administrative remedies he failed to exhaust. The court responded: "Sir, I am not

22

prepared to do that at this time.  I think that is outside the scope of what I was asked to do today.  [¶]  I do believe that the previous judgment is correct on administrative remedies and that is having looked through everything and I think that should be -- that is the primary point on the Court's ruling."

We do not construe the trial court's comments as indicating the court was *unaware* of what administrative remedy Swenson was required to exhaust, but rather that the court was *unwilling* to give what could be perceived as legal advice on next steps to Swenson. In any event, we review de novo whether Swenson complied with the exhaustion doctrine (*Plantier*, *supra*, 7 Cal.5th at p. 380), and therefore the court's comment does not affect our analysis.

Next, Swenson argues that a vested rights determination would be futile because the County argued in the context of his federal civil rights claim that the use permit did not authorize surface mining.[8]  Although a party will be excused from the exhaustion requirement if pursuit of the remedy would be futile (*Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1126), that exception is narrow (*Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 683) and applies only if " ' "the petitioner *can positively state* that the [administrative agency] has declared *what its ruling will be in a particular case*" ' " (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 418).  Swenson's futility claim fails because he is entitled to a neutral, third party hearing official, who has not prejudged his claim. (County Code, § 10-5.106, subd. (h)(1).)

Swenson contends that he properly pled exceptions to the exhaustion doctrine. But merely pleading that an exception to the doctrine applies is not sufficient; demurrer is appropriate when the complaint, attached documents, and judicially noticeable facts

---

[8]  He also argues futility on the basis that *Swenson I* established his vested mining rights, but we have rejected that argument.

indicate that exhaustion has not occurred and no *valid* excuse has been alleged. (*Parthemore v. Col*, *supra*, 221 Cal.App.4th at p. 1379.) Because we conclude that no *valid* excuse has been alleged, demurrer is appropriate.

Finally, we must determine whether Swenson is entitled to leave to amend. Swenson has the burden of demonstrating a reasonable possibility that he could cure the defect in the FAC by amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Because he has neither requested leave to amend nor demonstrated a reasonable possibility that he could cure the defect in his complaint, he is not entitled to leave to amend.

Because Swenson has an adequate administrative remedy that he has failed to exhaust, we affirm the trial court's judgment sustaining the County's demurrer.[9]

### DISPOSITION

The judgment is affirmed. The parties shall each bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Krause, J.

---

[9] Given our conclusions, we need not and do not address the County's arguments that issue preclusion bars Swenson's claims or that there is no actual controversy giving rise to declarative relief.